BOWMAN & BLATZ v. RALEY. (No. 6187.)

(Court of Civil Appeals of Texas. San Antonio. March 26, 1919.)

1. EVIDENCE ☞117—FOUNDATION—DAMAGES FROM TRESPASS.

In action for injury to cotton crop from trespassing cattle, where plaintiff testified that the cattle were not permitted to stay in the cotton, but were from time to time driven out as soon as discovered, testimony as to how much cotton a cow could destroy in a day was inadmissible, because there was no basis in prior testimony for calculating the time the cattle were in the cotton.

2. DAMAGES ☞112—CROPS.

Generally the measure of damages when a crop is totally destroyed, whether it is matured or growing, is its market value, if it has one, at the time and at the place it is destroyed and legal interest thereon from the date of its destruction; and, when the crop is partially destroyed, it is the difference between its market value if it had one, as it stood immediately preceding and its market value immediately following the injury, with legal interest on the amount of such difference.

3. DAMAGES ☞112 — VALUE OF GROWING CROP.

To arrive at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and the expense of such cultivation, as well as the cost of its preparation and transportation to market.

4. EVIDENCE ☞505—EXPERTS—FARMERS.

The testimony of a farmer who qualifies as an expert, testifying from his common experience with, and result of his observations made at the time as to the usual and common appearance or facts and condition of things, which cannot be reproduced to the jury, is admissible under an exception to the general rule excluding the conclusions of a witness.

5. EVIDENCE ☞536 — EXPERTS — FARMERS — QUALIFICATIONS.

As farmers testifying as experts can only testify as to things they have the necessary special knowledge about, great care must be used in qualifying such a witness as to his knowledge, observation, and experience in respect to the matters about which he may be called to testify.

Appeal from Medina County Court; R. J. Noonan, Judge.

Suit by H. L. Raley against Bowman & Blatz. From judgment for plaintiff, defendant appeals. Reversed and remanded.

De Montel & Fly, of Hondo, for appellant. Briscoe & Morris, of Devine, and Louis J. Brucks, of Hondo, for appellee.

COBBS, J. This suit was brought by appellee, H. L. Raley, in the justice court of precinct No. 5, Medina county, Tex., on October 4, 1917, against appellants, Bowman & Blatz, for damages in the sum of $75. On November 20, 1918, judgment was rendered by the justice court for plaintiff for the sum of $75, and an appeal was duly perfected by appellants to the county court of Medina county. On July 1, 1918, appellee filed an amended claim or petition in the county court, asking for damages in the sum of $128.05, alleged to have been caused to his crops by cattle belonging to appellants, and on the 2d day of July, 1918, a judgment was

rendered by the county court in favor of plaintiff for the sum of $105, the same being based on a verdict of a jury rendered on special issues submitted; and on the 3d day of August, 1918, appellants' amended motion for a new trial was overruled by the court, notice of appeal to this court was given, and the appeal duly perfected.

Appellants' first assignment of error in their amended motion for a new trial is as follows:

"Because the court erred in admitting the testimony of plaintiff, H. L. Raley, over the objections of defendants that cattle would eat and destroy as much as 25 pounds of cotton per head per day in the seed and before picked, and that the price of said cotton was from ten to twelve cents per pound, for the reason:

"(a) Because such testimony was irrelevant, immaterial, and not the proper measure of damages, and not the proper manner of arriving at the damages, if any.

"(b) Because the same would be evidence of a nonexpert, and the facts upon which he based his evidence had not been stated, and was not stated, to the jury.

"(c) Because such evidence was a conclusion of the witness, and not based upon facts sufficiently intelligent upon which to base an opinion with respect to the subject."

The first proposition under that assignment challenges the admissibility of testimony that cattle would eat and destroy as much as 25 pounds of seed cotton per head per day before picked, as contrary to the rule established by law for the purpose of arriving at the quantity of cotton lost by reason of the depredations of appellants' cattle.

The second proposition is that the market price of cotton in the seed at Devine, Tex., without evidence of the expense of gathering and placing same on the market at Devine, Tex., was insufficient, improper, illegal, not the proper manner of arriving at the damages, and not the measure of damages, and such evidence should have been excluded.

The correct rule for measuring damages in a case like this was not given, nor any special request made by either party to instruct the jury how to ascertain the same, and their verdict was rendered on an improper apprehension of the rights of the parties.

The substance of the testimony is:

"Sometimes there would be two or three head of defendants' cattle in the field, and sometimes there would be eight or nine or more. When we would find the cattle in the field we would run them out and tell the defendants about it, and though they would always promise to do something about it, they never did anything. About the latter part of September I made a trip to the Brownsville country, and was gone about two weeks, and when I came back I found defendants' cattle continuing to break into my field. I again went to see Mr. Bowman and Blatz, but they would do nothing. The cattle were in the field as many as six times during the day and night. They would be in the field when we would get up in the morning. The cattle were in the cotton off and on from about the 15th day of September, 1917, to the 4th of October, 1917. In my opinion a cow will eat and destroy from 20 to 25 pounds of cotton a day, and I estimate that amount as being a fair estimate of what each of these cattle ate and destroyed of my cotton each day. At this time there were about 8 or 10 bales open in the field and unpicked. The market value of seed cotton at Devine, at the time this cotton was destroyed, were 10 and 12 cents per pound. * * * We would always drive them out of the field as soon as we would see them. This occurred as many as five or six times a day. They did not break in every day, but on various days and nights. I have seen as many as nine head at one time in our cotton. There was a great deal of grass in our corn land, and after I cut the corn I grazed my stock on the land, but I always had a herder with them. My cows got into the cotton once or twice, and sometimes the mules and horses got into the cotton, but mules and horses did not eat the cotton. They might have knocked some out. I estimated my damages by the number of pounds of cotton that from my experience as a farmer I think that a cow will eat and destroy in a day from 20 to 25 pounds in a day."

[1] The testimony, as it stood, without facts that entered into the costs and expenses of its making, gathering, and preparing, was subject to the defendants' objection to such testimony without further proof as to its costs; more especially is it objectionable because the testimony as to how much cotton a cow could eat in a day was improper, because it would not be in keeping with the measure of damages named in the opinion, and because there was no basis in the testimony for calculating the time the cattle were in the cotton. They were not permitted to stay in the cotton, but they were from time to time driven out as soon as discovered. The evidence, we think, should have been excluded, and the court erred in not doing so.

[2, 3] The rule is, generally, as said in K. C., M. & O. Ry. Co. of Texas v. Mayfield, 107 S. W. 940:

"The measure of damages when a crop is totally destroyed, whether it is a matured or a growing crop, is its market value, if it has one, at the time and at the place it is destroyed, and legal interest thereon from the date of its destruction, and that the measure of damages when the crop is partially destroyed, but not wholly destroyed, is the difference between its market value, if it had one, as it stood immediately preceding and its market value immediately following the injury, with legal interest on the amount of such difference."

To arrive at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. Railway Co. v. Pape, 73 Tex. 501, 11 S. W. 526.

[4] While it is extending the doctrine of expert testimony in this case to the very limit, it seems to be the settled law that the testimony of a farmer who qualifies himself as an expert, testifying from his common experience with, and result of his observations made at the time as to the usual and common appearance or facts and condition of things, which cannot be reproduced to the jury, is admissible under an exception to the general rule excluding the conclusions of a witness. McCabe v. San Antonio, etc., 39 Tex. Civ. App. 614, 88 S. W. 387, writ of error denied 101 Tex. 647, 88 S. W. 387.

[5] As such experts can only testify as to things they have that special necessary knowledge about, great care must be used in qualifying such witness as to his knowledge, observation, and experience in respect to the very matters about which he may be called to testify. As this case, it is seen, will be reversed, from what we have said, all the other assignments of error are overruled.

Reversed and remanded for a new trial.