**Margaret B. TRICK, Appellant,**

v.

**Lorence W. TRICK, Appellee.**

**No. 6871.**

Court of Civil Appeals of Texas, El Paso.

Sept. 5, 1979.

Rehearing Denied Oct. 17, 1979.

Daniel R. Rutherford, San Antonio, for appellant.

Gary D. Howard, San Antonio, for appellee.

OPINION

OSBORN, Justice.

This divorce case involves a division of the community property and primarily relates to the issue of value of stock in a medical professional association. We affirm the judgment of the trial Court.

These parties were married in June, 1967, just after Dr. Trick graduated from medical school. He spent the next eight years in the Air Force working as a medical doctor,

and during that time did his orthopaedic residency. In July, 1975, he began private practice with the San Antonio Orthopaedic Group, P.A. At that time, there were four other physicians in the Group. A year later, he signed an employment contract and stock purchase agreement with the right to purchase one-fifth of the stock of the Association over a five-year period at a total cost of approximately $80,000.00. At the time of trial, he had paid approximately $32,000.00 on this commitment and received approximately eight percent of the stock of the Association. The Association had a stock redemption agreement with all of the doctors in the Association, which provided that in the event any doctor left the Group his stock was to be repurchased at a price to be determined by a formula provided in the agreement. That formula provided that the value of the stock should be the capital and surplus of the Group plus the full amount of all accounts receivable, less a five percent collection discount, less a reserve for uncollectible or doubtful accounts, less accounts payable by the Group, less a provision for income tax to be paid by the Group plus an allowance of ten percent of the sum of the above items as good will. Based upon that formula, the evidence at trial indicated the value of each share of stock in the Association was $17.86. The jury found the value of the parties' 1,141.5 shares of stock to be $37,852.14. They found the value of the right to acquire an additional 1,594.5 shares of stock to be "0."

The Court divided all of the community property and included in the sum awarded to the wife the sum of $20,000.00 for her interest in the stock of San Antonio Orthopaedic Group, P.A.

■ By her first three points of error, the Appellant complains of the trial Court's refusal to permit Eugene P. Cagle to testify as an expert witness. By this witness, the Appellant offered to prove that the value of the parties' stock in the Association was $1,040,000.00. Mr. Cagle graduated from high school, and attended Southwestern Graduate School of Banking at S.M.U., but he does not have a college degree. He had been employed as a vice president of the American National Bank in Austin and as a vice president by First National Bank of San Antonio. For about six months he was president of Security Bank of Ridge Hill, Missouri. He was in the banking business approximately twenty years. In 1974, he became a wholesale distributor of copying machines. In November of that year, he attempted to set up a joint venture in agriculture in Iran, but it has never been completed. He now serves as a vice president and general manager of a chemical company.

When the witness was taken on voir dire examination as to his qualifications, he said that he did not belong to any professional organizations or societies, he is not an accountant, and does not subscribe to any trade publications. With regard to evaluating stock of a professional corporation, his testimony was as follows:

Q   Have you had any other experience as far as going in and valuating a professional association as to the value of their stock?

A   Well, by the methods—I personally have not done that, but these are acceptable methods for the valuation.

Q   But you yourself have never done it?

A   No.

Q   And have you ever done it for a set of attorneys?

A   No.

.   .   .   .   .

Q   And you told me before you have never come into court, never testified in any kind of a case; is that true?

A   That's correct. Well, let me clarify this. As a quote expert witness?

Q   Yes.

A   Correct.

While he had as a banker made loans to many companies, he readily acknowledged that "you don't value the stock in each one of those companies in arriving at whether or not to extend credit." He also testified:

Q   Are you familiar with the income tax code and the laws that are applied to

professional corporations and associations?

Q   Not particularly, no.

Q   And you never before valued a professional association as to stock; is that correct?

A   No.

The general rule with regard to qualifications of an expert witness is set forth in 2 McCormick & Ray, *Texas Law of Evidence*, Sec. 1401 (1956), as follows:

Since his testimony is received on the theory that he possesses a knowledge or skill not had by people generally, his qualification must affirmatively appear before his opinion will be received. The burden of establishing his qualification naturally rests upon the party offering the alleged expert. Whether the person offered possesses the required qualification is a preliminary question to be determined by the trial judge and should not be left to the jury. In the decision of this question our courts have wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse. (footnotes omitted)

That same section of the text goes on to say: "The person offered must possess special knowledge as to the very matter on which he proposes to give an opinion."

In *Wilson v. Scott*, 412 S.W.2d 299 (Tex. 1967), the Court, in an opinion by Justice Pope, considered a trial court's ruling that a medical doctor was not qualified to express an opinion in a medical malpractice case. The Court found no error in excluding the testimony and, in doing so, noted that the doctor was no longer a practicing physician, but was engaged in business and that he had no special knowledge in the particular area of medicine involved in that case. In *Loyd v. Rumbaugh Trucking Company*, 313 S.W.2d 542 (Tex.Civ.App.—El Paso 1958, writ ref'd n.r.e.), this Court upheld the exclusion of testimony of witnesses offered as expert truck drivers, where they had not driven the type of truck involved in an accident in that case. The same result was reached by the Court in an opinion by Justice Norvell in *Union Bus Lines v. Moulder*, 180 S.W.2d 509 (Tex.Civ.App.—San Antonio 1944, no writ), where the witness did not use any technical or scientific methods in arriving at his opinion as to the speed of a vehicle.

■ We find no abuse of discretion in excluding the testimony of this witness. There was no error in denying counsel the right to further qualify the witness. He never evaluated stock of a professional corporation in twenty years of banking business. He had been out of that business for four years. He had no expertise for making such an evaluation and had never performed such a service before. Before a court may permit evidence from an expert, the judge must be satisfied that the witness has specific qualifications not possessed by the jury, which can aid them in their determination of an issue before them. The trial Court properly concluded this witness did not have such qualifications. Points of Error Nos. 1, 2, and 3 are overruled.

The next point asserts the trial Court erred in entering judgment without taking into consideration all relevant interest in reaching an equitable division of the community property. The Appellant cites two cases and relies primarily upon next to the last paragraph of the opinion in *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972), and the holding in *Geesbreght v. Geesbreght*, 570 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1978, writ dism'd), for his contention that in considering the value of stock in a professional association the value of good will must be considered. In the *Nail* case, the Court held that accrued good will of a husband's medical practice did not constitute property subject to division upon divorce as part of the estate of the husband and wife. At the end of that opinion, the Court specifically noted that it was not concerned with good will as an asset instant to the sale of a professional practice or that may exist in a professional association or corporation apart from the person of an individual member. In the *Geesbreght* case, the Court was involved with the value of stock in a medical professional association and the Court reached the conclusion that good will was a

part of the relevant property interest in the stock owned by the parties in the divorce case.

■ We conclude that the trial Court followed the holdings in the above cases, and evidence was received in this case as to good will as an element of value of the stock of the professional association. Of the total value attributed to the value of the stock of the Group, more than $22,-000.00 was allocated to good will. Therefore, we hold that the trial Court did consider this relevant interest in reaching an equitable division of the community property, and Point of Error No. 4 is overruled.

■ The last point asserts error in denying respondent's motion for sanctions and in the alternative for a continuance because she was put to trial at a time when she was not prepared to meet the evidence offered by the Appellee. The record reflects that on May 24, 1978, the Court entered an order directing that the Appellee forthwith deliver to the accountant for the Appellant certain portions of the 1976 and 1977 tax returns of the San Antonio Orthopaedic Group, P.A., including schedules showing the balance sheet of the corporation at the beginning and ending of those years and schedules showing the profit or loss operating statement for those years. In that same order, the Court set the case for trial on June 12, 1978. As shown by a receipt in the record, the financial information was delivered on June 8, 1978.[1] The case actually commenced on June 14, 1978, and, before any evidence was heard, the Appellant urged the motion for sanctions and urged the trial Court to refuse to allow the Appellee the right to oppose Appellant's evidence as to the fair market value of the stock owned by the parties in said San Antonio Orthopaedic Group, and refuse to allow Appellee the right to offer any evidence showing the book value of such stock, and to refuse to allow Appellee the right to cross-examine any of petitioner's witnesses on the question of the value of such stock, and

to refuse to allow Appellee to in any way establish the fair market value of said stock, all as a sanction for refusing to comply with the spirit of the Court's order of May 24, 1978. In the alternative, the Appellant sought in said motion a continuance of the case. The motion for sanctions and continuance was denied. We find no abuse of discretion upon the part of the trial Court in overruling the motion, both for sanctions and continuance. At the time the case was tried, it had been on the Court's docket nearly seventeen months. The case had been set for trial on two prior occasions and twice the Appellant had filed motions for continuance. Interrogatories had previously been sent to the Appellee, and the deposition had been taken of the person doing the bookkeeping and tax work for the Association. At the hearing on the motion, counsel for the Appellant testified with regard thereto and acknowledged that counsel for the Appellee had offered to let him withdraw his announcement of ready and put the case off for a month, but he refused to do so. Instead, he testified as follows:

Q Now, Mr. Rutherford, are you urging this Motion for Sanctions because you're telling the Court that you're not ready for trial?

A No. 'I'm ready for trial. I've been ready for trial. I'm ready. . . .

. . . . .

Q But you filed a Motion for Continuance, didn't you?

A I did in the alternative. And then also, Mr. Howard, you weren't here and present. Mr. Wilson will advise you that I waived my Motion for Continuance before the Court denied it in chambers.

We conclude the trial Court took counsel at his word when he said he was ready for trial. He having acknowledged that he waived his motion for continuance, we find no error in the trial Court overruling that motion. Point of Error No. 5 is overruled.

1. At that time, Dr. Trick was represented by another attorney, and not the one who represented him in the trial of this case.

The judgment of the trial Court is affirmed.