Emmett Murray HOLLOWAY,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 64411.

Court of Criminal Appeals of Texas,
En Banc.

April 1, 1981.

Ebb B. Mobley, Court-appointed, Long-view, for appellant.

Odis R. Hill, Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This automatic appeal[1] results from a conviction for the offense of capital murder pursuant to V.T.C.A. Penal Code, § 19.-03(a)(1).[2]  Upon the jury's return of affirm-

---

1. See Article 37.071(f), V.A.C.C.P.

2. Section 19.03, supra, provides in relevant part:

ative answers to two special issues submitted, Article 37.071(b), V.A.C.C.P., appellant's punishment was assessed at death. Article 37.071(e), supra.

Briefly, the evidence adduced at the guilt-innocence stage of trial reflected that in the early morning hours of November 22, 1977, appellant successively robbed two different convenience store clerks at gun point, at approximately 12:20 a. m. and 1:15 a. m. Accompanied by Marilyn Gail Griffin and driving her car, appellant saw a police car, its red lights and spot light on, pull out behind him. As appellant pulled over, police officer Marshall Sowders exited his car and called out for appellant to do likewise. Officer Sowders walked toward appellant, and according to Griffin, did not have his weapon drawn.

Marilyn Griffin testified that at this point she heard five shots fired and saw Officer Sowders thrown back and then fall. Appellant jumped back into the car and drove off at a rapid rate of speed, telling Griffin that he "knew what he did" and that the officer "wasn't the only one that needed it." Appellant then handed Griffin the .357 caliber magnum pistol and told her to reload it as they were pursued by more police officers. Eventually a police car pulled up beside them and as an officer aimed a shotgun out the window at appellant, he stopped the car. Appellant was ordered out of the car and right after he exited, Marilyn Griffin was shot by an officer. As a result, Griffin was confined to a wheelchair.

At the punishment phase, the State called James P. Grigson, M.D., a psychiatrist, for the purpose of adducing expert opinion testimony that there is a probability that appellant would commit criminal acts of violence constituting a continuing threat to society.[3] The State then rested its case on the punishment issues, and appellant called his sister, Jerida Holloway McCartney, a pharmacist. Mrs. McCartney testified that the twenty four year old appellant had no prior criminal record and had completed one year of college.

The father of the witness and appellant had died in a mental institution for war veterans after having been institutionalized for three years, in 1973. According to McCartney, her father had a criminal record and had served time in prison. Appellant, she testified, had attempted to join the military, but was unable to meet medical criteria for admission due to disabilities suffered at the age of fourteen as a result of a motorcycle accident. Appellant's primary and lingering injury was a subdural hematoma, a blood clot on his brain; from brain surgery, appellant had suffered complications which precluded his entry into the Armed Forces. According to McCartney, scar tissue from the brain surgery had caused a permanent neurological malfunction, the effects of which were similar to epilepsy.

The witness testified that she had seen her brother suffer seizures which rendered him unconscious for times ranging between twelve and twenty four hours, after which for three or four days he would lose his orientation and be unable to remember anything. Appellant had been hospitalized in both Confederate Memorial in Shreveport,

"(a) A person commits an offense if he [intentionally or knowingly causes the death of an individual] under Section 19.02(a)(1) of this code and:
    (1) The person murders a peace officer . . . who is acting in the lawful discharge of an official duty and who the person knows is a peace officer. . . ."

**3.** Article 37.071, supra, provides in germane portion:
    "(a) Upon a finding that the defendant is guilty of a capital offense, the trial court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. * *

(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
    *    *    *    *    *    *
    (2) *whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society*; . . . ."
(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

as well as Schumpert Sanatorium, until he was transferred to a charity hospital when insurance coverage ran out. Appellant had a sporadic work history due to his inability to maintain a job after periodic incapacitation.

By his first ground of error, appellant contends that the trial court abused its discretion in permitting the State to adduce the opinion testimony of Dr. Grigson regarding appellant's future dangerousness. In argument before this Court, the State contended that appellant's objection varied from his ground on appeal.

The record reflects, however, that defense counsel stated prior to Dr. Grigson's taking the stand:

"We have a specific competency objection on this witness. Competency is to be determined by the Court prior to the witness' taking the stand."

Thereafter, Dr. Grigson was called for purposes of establishing the admissibility of his testimony outside the presence of the jury.

After he was sworn, in response to questions by the prosecutor, Dr. Grigson recited his educational and practical experience background and enumerated his licenses and certifications in the field of psychiatry; immediately thereafter, the district attorney declared, "Your Honor, based upon those qualifications, we submit that this witness is competent to express an opinion concerning the field of psychiatry." Defense counsel then elicited from Dr. Grigson the fact that he had made no psychiatric or medical examination of the accused.

Defense counsel again objected to the competency of the witness, asserting that "his testimony would be irrelevant to any issue before [the] jury," and that any opinion Dr. Grigson would give, would be based upon hearsay, thereby denying appellant his rights to cross examination and effective assistance of counsel. In response, the trial court inquired of the prosecutor whether he intended to elicit the opinion based upon a hypothetical question.

The District Attorney replied in the negative and advised the court that the State would show Dr. Grigson's opinion to be based upon interviews with "people who knew [appellant] prior to and subsequent to this offense," the arresting and interrogating officers involved, "people in the jail," and thorough reviews of the offense report, as well as medical information reflected upon a form appellant had filled out at the time of his admission to county jail.

The trial judge ruled that the opinion testimony would be received, but he would not permit the witness to testify as to the content of conversations on which the opinion was based. Appellant again voiced his several objections.

We are constrained to agree with appellant that the trial court abused its discretion in permitting Dr. Grigson to testify for the reasons about to be delineated.

■ Initially we note that it is a general rule of evidence that opinion testimony, like hearsay, is inadmissible because it is not based upon personal knowledge of the existence of facts capable of being proved by direct evidence.[4] Clearly, there is nothing to be gained by permitting a witness to proffer an opinion on a subject when any other person in the courtroom, any member of the jury, could form an opinion on the issue equally readily and with the same degree of logic as the witness.[5] But when the jurors are not competent to infer, without the aid of greater skill than their own, the probable existence of the facts to be ascertained, or the likelihood of their occurring from other facts actually proved, ex-

4. See generally J. Lawson, *Expert and Opinion Evidence* (1886), [hereinafter cited as Lawson]; see also *Loper v. Andrews,* 404 S.W.2d 300 (Tex.1966).

5. See *Green v. Houston Belt & Terminal Ry. Co.,* 558 S.W.2d 127 (Tex.Civ.App.—Houston 1977, no writ); *Galveston H. & S. A. Ry. v. Sweeney,* 6 Tex.Civ.App. 173, 24 S.W. 947 (1894, no writ); *Radam v. Capital Microbe Destroyer Co.,* 81 Tex. 122, 16 S.W. 990 (1891); and *Shelley v. City of Austin,* 74 Tex. 608, 12 S.W. 753 (1889).

pert opinion evidence is rendered admissible.[6]

"The opinions of experts are received upon the theory that, by reason of study or experience, they have upon *the subject of inquiry* a special knowledge which *jurors generally do not possess* and are therefore *better equipped* to draw conclusions from the facts *than the jurors themselves.* * * * [T]he practical test for receiving such opinion is: On the *subject in issue* can the jury receive any *appreciable aid* from the person offered?" [7]

R. Ray, Law of Evidence, 2 *Texas Practice* § 1400 (3rd ed. 1980) [hereinafter cited as Ray].

■ Because of the theory upon which a purported expert's testimony may be admitted, the burden of establishing the admissibility of the expert's opinion rests on the party offering such evidence;[8] thus, whether the subject in issue is one upon which expert opinion would assist the jury and, if so, whether the proffered witness possesses the requisite qualifications, are preliminary questions for the trial court to decide and are not a matter of "weight" only, to be determined by the jury.[9]

■ Merely that the witness has professional credentials or occupational status in a calling which relates to the matter in question is insufficient to qualify him. Rather, it must be shown that he possesses special knowledge upon the specific matter about which his expertise is sought.[10] And indeed, "even though a witness' qualifications as an expert may be established or admitted, his opinion may be inadmissible if there is no evidence of technical or scientific support for it." [11] Ray, § 1400 at 26–27. The special knowledge which qualifies a witness to give an expert opinion may be derived entirely from a study of technical works, or specialized education, or practical experience or varying combinations thereof;[12] what is determinative is that his answers indicate to the trial court that he possesses knowledge which will assist the jury in making inferences regarding fact issues more effectively than the jury could do so unaided. Ray, § 1401; *Moore v. Grantham*, 599 S.W.2d 287 (Tex.1980); *Bowman and Blatz v. Raley*, 210 S.W. 723 (Tex.Civ.App.—San Antonio 1919, no writ); see also *Lawson, supra.*

**6.** *Lawson, supra; Loper v. Andrews,* 404 S.W.2d 300 (Tex.1966); *Union Bus Lines v. Moulder,* 180 S.W.2d 509 (Tex.Civ.App.—San Antonio 1944, no writ); and *Cadena v. State,* 94 Tex.Cr.R. 436, 251 S.W. 225 (1923).

**7.** See also *Burns v. Bridge Engineering Corp.,* 465 S.W.2d 427 (Tex.Civ.App.—Houston 1971, writ ref'd n.r.e.); and *Koonce v. Perales,* 268 S.W.2d 683 (Tex.Civ.App.—San Antonio 1954, no writ).

**8.** E. g., *Griffin v. State,* 116 Tex.Cr.R. 497, 31 S.W.2d 812 (1930); *Holder v. State,* 81 Tex. Cr.R. 194, 194 S.W. 162 (1917); Ray, § 1401, at 28.

**9.** Ray, § 1401. See also *Trick v. Trick,* 587 S.W.2d 771 (Tex.Civ.App.—El Paso 1979, writ dism'd); *United States Fire Ins. Co. v. Stricklin,* 556 S.W.2d 575 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.); *Beard Drilling Co. v. Steeger,* 361 S.W.2d 888 (Tex.Civ.App.—Houston 1962, aff'd in part, revs'd on other grounds, 371 S.W.2d 684); and *Bowman and Blatz v. Raley,* 210 S.W. 723 (Tex.Civ.App.—San Antonio 1919, no writ).

**10.** Ray § 1401; see, e. g., *Winegarner v. State,* 505 S.W.2d 303 (Tex.Cr.App.1974) [in which psychiatrist's testimony properly excluded when purported expert opinion sought to establish the accused's lack of intent to murder as being "based on conjecture"]; and *Jones v. Traders & General Ins. Co.,* 140 Tex. 599, 169 S.W.2d 160 (1943) [in which physician's opinion that deceased was probably insane because of witness' personal belief that anyone who would commit suicide is "off balance," held to be no evidence].

See also *Moore v. Grantham,* 599 S.W.2d 287 (Tex.1980); *Hutchins v. Humble Oil & Refining,* 161 S.W.2d 571 (Tex.Civ.App.—Galveston 1942, writ ref'd w. o. m.); *San Marcos Oil Mill v. Soyars,* 265 S.W. 173 (Tex.Civ.App.—Austin 1924, no writ); *Southern Telegraph and Telephone Co. v. Evans,* 54 Tex.Civ.App. 63, 116 S.W. 418 (1909, writ ref'd).

**11.** See, e. g., *Winegarner v. State,* supra; *Jones v. Traders & General Ins. Co.,* supra; and n. 10, ante; see also *Union Bus Lines v. Moulder,* supra; and *Simmons v. State,* 79 Tex.Cr.R. 492, 186 S.W. 325 (1916).

**12.** See *Beard Drilling Co. v. Steeger,* supra; and *Bowman and Blatz v. Raley,* supra; cf. *Taubert v. Earle,* 133 S.W.2d 145 (Tex.Civ.App. —Fort Worth 1939, writ ref'd).

Furthermore, expert opinion evidence must be tested and limited by the same considerations as other evidence in determining its admissibility: whether its probative value outweighs its prejudicial potential.[13] Thus the admission of the expert's opinion is dependent upon the offering party's showing that it is appropriate because of the unfamiliarity of lay jurors with a body of expertise which is *relevant* to the resolution of the litigation. Concomitantly, relevance of the opinion to an issue in litigation is established only if the expert's conclusion is based upon facts either proved or assumed. *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr.App.1980); *Moore v. Grantham*, supra; *Montgomery Ward & Co. v. Levy*, 136 S.W.2d 663 (Tex.Civ.App.— Fort Worth 1940, writ dism'd judgmt. cor.); and see also Ray, § 1402, wherein it is stated:

> "The expert's opinion testimony derives its value not from [actual personal] observation but from special knowledge or experience, enabling him to draw inferences *more reliably than the jury can unaided.* Thus the expert witness is not confined to opinions on facts within his own knowledge." [14]

Likewise, an objection to the relevance of an expert opinion will be overcome if the offering party can demonstrate that it is based only *in part* upon reports or records which have a high degree of reliability such as business records or official records,[15] *Moore v. Grantham*, supra; *Reed v. Barlow*, 157 S.W.2d 933 (Tex.Civ.App.— San Antonio 1941, writ ref'd). Sources of information underlying the opinion—such as medical studies, medical books, reports of other medical personnel and statements of patients—which are generally accepted by physicians as a basis for judgments regarding treatment, should withstand most objections on the ground of relevance.[16] Ray, § 1404; see also *United States Fire Ins. Co. v. Stricklin*, supra.

Clearly then, the burden placed upon the party seeking admission of expert opinion testimony is far greater than illustrating the witness' educational and experiential accomplishments in some area of expertise. So, appellant's objection to Dr. Grigson's "competency" as a witness, though characterized as general, was perfectly adequate to hurl the ball back into the prosecutor's court when *none* of the requisites for admissibility had yet been established.

Appellant's further objection to the "relevance" of an opinion concerning the probability of *his* future conduct, formed by a psychiatrist who had never examined him and knew nothing of his psychiatric history, directly informed the trial court and the prosecutor that the proffered opinion had not been shown to have any value, probative of the issue before the jury in *appellant's* trial. *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977). The prosecutor's response—that the opinion was formed on the

---

13. George, *Use and Misuse of Scientific Evidence,* in Scientific and Expert Evidence in Criminal Advocacy 1 (J. Cederbaums and S. Arnold ed. 1975). See also *Griswold v. Tucker,* 216 S.W.2d 276 (Tex.Civ.App.—Fort Worth 1949, no writ).

14. Therefore "where the expert speaks from personal knowledge or observation he may give his opinion without an advance hypothetical statement. But if the witness cannot supply the facts upon which his expert inference is to be founded they must be presented hypothetically." *Id.*

15. See Ray, § 1406 where it is stated:
"... [T]he opinion rule is applicable to hearsay statements admissible under some exception to the hearsay rule. Since the object of the opinion rule is *to exclude as superfluous* a statement of *inferences* from facts observed by a witness *when the facts themselves can be elicited on the stand by pointed questions, and [thus] presented to the jury for its own inferences,* the rule would seem to have little application to situations where the declarant is unavailable as a witness, and his inferences furnish the only available data."

16. Where such sources of information, as well as objective findings, base on expert opinion, they are embraced in some fashion within a fairly framed hypothetical question. Ray, § 1403 at 37–41. We observe that, consistent with its response to the trial court, that it would not, the State did not put that type of question to Dr. Grigson when he testified before the jury.

basis of conversations had with "people who knew appellant"[17]—clearly did not meet or remove the ground of objection. Indeed, recognizing the unreliability of Dr. Grigson's sources, the trial court instructed counsel not to "go into" those conversations.[18] Compare *Moore v. Grantham,* supra.

We therefore disagree with the State that appellant's objection at trial varied from his assertion on appeal. Further, we hold that while a duly qualified expert witness may give his opinion based upon sufficient relevant facts, those facts must be either within his personal knowledge, or assumed from common or judicial knowledge, or established by evidence; "his opinion is without value, and is inadmissible, if based upon facts and circumstances gleaned by him from ex-parte statements of third persons, and not established by legal evidence before a jury trying the ultimate issue[ ] to which the opinion relates." *Reed v. Barlow,* supra at 935, reiterated in *Moore v. Grantham,* supra, at 290.

For the admission into evidence of an opinion which met none of the criteria discussed herein, the judgment of conviction is reversed and this cause is remanded to the trial court. Cf. *Porter v. State,* 578 S.W.2d 742 (Tex.Cr.App.1979).

---

**17.** These people were later revealed to be appellant's co-defendant—who was crippled as a result of the capital murder transaction—and her mother; a victim of one of the robberies which preceded the capital murder; and, the arresting and interrogating police officers.

**18.** But under this ruling how could defense counsel hope to challenge the validity and reliability of the opinion testimony before the jury, knowing it to be based on inadmissible information, without "opening the door" to the ad-

mission of the evidence? See, e. g., *Rodriquez v. State,* 597 S.W.2d 917 (Tex.Cr.App.1980), which illustrates how crucial it is for the trial court to allow thorough and careful exploration of the admissibility of expert opinion testimony, when an objection is voiced to the competence of the witness or the relevance of the opinion to be offered, outside the presence of the jury.

Also in this regard, see n. 14 *ante,* and accompanying text.