David BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 458–84.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 30, 1985.

Charles M. Mallin, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Anthony I. Gonzales, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

TEAGUE, Judge, dissenting.

On direct appeal to the El Paso Court of Appeals, as well as in the petition for discretionary review that has been filed in this cause, it was urged on behalf of David Brown, appellant, that the trial court erred in refusing to admit at the guilt stage of the trial the testimony of Dr. Harmon Hosch, an assistant professor of psychology at the University of Texas at El Paso. Had Dr. Hosch been permitted to testify, he would have testified, inter alia, to the subject of the unreliability of eyewitness identification under stressful situations, which subject has in recent times become a subject of much interest to persons interested in the field of criminal law. See, for example, *People v. McDonald*, 690 P.2d 709 (Supr.Calif.1984).

The record on appeal reflects that the State's case against appellant was based solely upon eyewitness identification. There is no corroborating evidence to con-

nect or link appellant to the aggravated robbery that was committed by three unknown individuals on two employees of the Sun City Area Transit Shop, which is located in El Paso. Even after being shown photographs of suspected robbers, the two employees were unable to make positive identifications of the robbers. However, one of the employees, the only one of the two who testified in the jury's presence, later identified appellant in a police conducted corporeal lineup as being one of his robbers. He also made an in court identification of appellant as being one of the three robbers.

The El Paso Court of Appeals, in an unpublished opinion, in affirming the trial court's decision not to permit Dr. Hosch to testify, which decision was based solely upon the fact that Dr. Hosch had not personally interviewed the victims, gave the following reasons why Dr. Hosch's testimony was inadmissible evidence: "Basically, this was an attempt to use an expert witness to attack credibility of two lay witnesses. That purpose is served by cross-examination of each witness and the issue of credibility is then left to the jury. The average juror should be able to decide whether a witness has made a proper identification without assistance from an expert witness. See: *Holloway v. State*, 613 S.W.2d 497 (Tex.Crim.App.1981)."

Because I find that the conclusions stated by the court of appeals, as well as its authority, are unacceptable, I am compelled to file a written dissenting opinion to this Court's denying appellant leave to file his first motion for rehearing.

In *Holloway*, supra, this Court set forth the general rule, which states the predicate that must be satisfied before expert witness testimony becomes admissible: "[W]hile a duly qualified expert witness may give his opinion based upon sufficient relevant facts, those facts must be either within his personal knowledge, or assumed from common or judicial knowledge, or established by evidence; [otherwise], his opinion is without value, and is inadmissible, if based upon facts and circumstances gleaned by him from ex-parte statements of third persons, and not established by legal evidence before a jury trying the ultimate issue[s] to which the opinion relates." (Citations Omitted). (503). As easily seen, there is no requirement that before the expert witness may testify he must first personally interview a witness who testifies or is going to testify for the prosecution. Thus, *Holloway*, supra, does not support the reason the trial court expressly gave for excluding from the jury Dr. Hosch's testimony.

In *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1984), one of the contentions that the defendant in that cause made was that testimony from the well known psychiatrist, Dr. Grigson, should not have been admitted because Dr. Grigson had not personally interviewed the defendant, and answered only hypothetical factual type questions. The Supreme Court rejected the contention, holding that it is permissible for the prosecution to present to the jury at a capital murder sentencing hearing testimony from a psychiatrist directed to the "probability" question, see Art. 37.071, V.A.C.C.P., even though the psychiatrist has never personally examined the defendant, and had formed conclusions based only upon hypothetical questions propounded by the prosecuting attorney. The Court, however, implicitly conditioned its holding upon the fact that the conclusion the psychiatrist states must be deduced by him from facts that are not disputed, or from facts given in evidence.

Thus, *Barefoot v. Estelle*, supra, comports with what this Court stated and held in *Holloway v. State*, supra. Also see Rule 702 of the recently enacted Texas Rules of Evidence, which are applicable only to civil proceedings. Rule 702 provides in part: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence ..., a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise."

However, the holdings in *Holloway v. State*, supra, and *Barefoot v. Estelle*, supra, are inapplicable to this cause because the admission of Dr. Hosch's proffered testimony would not have gone to an ultimate factual issue, as occurred in those causes, but, instead, was offered solely to assist the jurors in judging or evaluating eyewitness identification testimony.

In deference to the court of appeals' decision to sustain the trial court's decision not to permit Dr. Hosch to testify in the jury's presence, I must concede that its holding is in accord with the general rule that trial and appellate courts have been reluctant to admit testimony of experts *in the field of eyewitness identification*, primarily on the rationale that jurors are capable of deciding identification issues without expert assistance. See Sobel, *Eyewitness Identification: Legal and Practical Problems* (1984 Edition).

At one time, before it became an established scientific fact that eyewitness identification testimony may be unreliable, it was permissible to exclude such testimony as was proffered in this cause. However, but in light of what the experts, who have scientifically studied eyewitness identification testimony, have now shown and proved, is now not the time to abandon in whole or in part the above exclusionary rule?

The decisions by the courts reflect, in excluding such testimony, that they rely almost exclusively upon the conclusion that such testimony is impeachment testimony, as well as the fact that because the credibility of a witness is for the jury to decide, the expert is in no better position than the jurors. Unquestionably, if such a witness were called to testify solely to the fact that another witness is not believable, such testimony would be inadmissible. See *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App. 1972), in which this Court concluded that psychiatric testimony going solely to the *impeachment of a witness* should not be admitted because, "in our opinion, the benefit to be gained from such testimony is not great enough to offset the disadvantages which we have listed... In short, we do not feel that such testimony will enable the jury to better decide the issue, (whether to believe the witness)." (221). Notwithstanding this holding, this Court also held that it would continue to subscribe to the principle that "the purpose of expert witness testimony is to supply knowledge that would ordinarily not be available to the trier of the fact." (221). This Court also held that the "invasion of the province of the jury rule," that was formerly determinative whether an expert witness would be permitted to testify, "was due a long overdue and official burial," (220), and buried the rule. Thus, a trial judge abuses his discretion if he prevents an expert witness from testifying solely because his testimony might "invade the province of the jury."

But did Dr. Hosch's proffered testimony go solely to the credibility of the identifying witness?

The record in this cause reflects that Dr. Hosch would have testified that he was an assistant professor in psychology at the University of Texas at El Paso, hereinafter called U.T.E.P., that he had been so employed since 1975, and that his specialty was personality and social psychology, with his subspeciality being the unreliability of eyewitness identification. He also would have testified to the subject of eyewitness identification as it relates to the field of psychology, to the factors which are considered in evaluating eyewitness identification, namely, stress, web and focus, and to the effects of repeated exposure to the same person or the repeated showing of photographs of the accused to the witness. He further would have testified to the factor of identification by Mexican-Americans of Anglo subjects, which in this cause was material because the appellant is an Anglo male and the identifying witness is a Mexican-American male. Dr. Hosch also would have testified to experiments which had been conducted by the psychology department at U.T.E.P., and to the results of those experiments.

From the above, as well as from the record, I find that Dr. Hosch was just as

qualified to testify as Professor Elizabeth Loftus, who has been hailed as "perhaps the leading expert today on the psychology of the eyewitness," "who has substantial credentials as an experimental psychologist specializing in human memory and perception," 15 *Trial Lawyers Quarterly* 10, 11 (1983); 69 *Mass.Law Review* 2 (1984), and who has testified on eyewitness identification in at least thirty-four cases. Also see her outstanding work *Eyewitness Testimony*, in which are contained almost ten pages of reference works, which concern eyewitness identification. I also believe that Dr. Hosch was just as qualified to testify as Dr. Robert Buckhout, who has been permitted to give similar testimony in at least twenty state court trials. See *State v. Warren*, 635 P.2d 1236, 1243 (Kan. Supr.1981).

In this instance, the trial court expressly held that because Dr. Hosch had not interviewed the victims of the robbery, he was not qualified to give such testimony. This, of course, under either *Hopkins v. State*, supra, *Holloway v. State*, supra, or *Barefoot v. Estelle*, supra, was an insufficient reason to prevent Dr. Hosch from testifying.

It is apparent to me, however, that what the trial court really meant, when he held that Dr. Hosch could not testify, was that such proffered testimony would have consumed too much time, would have "invaded the province of the jury," which, as noted, see *Hopkins v. State*, supra, is no longer a viable reason for excluding testimony of an expert witness, or that proper cross-examination was adequate to reveal any frailty in the identification of appellant as one of the robbers. See Sobel, supra, at Sec. 9.6(b). I cannot accept the express reason, or the implied reasons, either individually or as they might be combined, to exclude Dr. Hosch's testimony.

For the reasons stated by the Supreme Court of Arizona, in its decision of *State v. Chapple*, 660 P.2d 1208 (Ariz.Supr.1983), I am unable to agree that the consumption of time that might have been involved in the direct and cross-examination of Dr. Horsch, in comparison with the importance of the issue that was before the jury, was sufficient, standing alone, to preclude Dr. Hosch from testifying.

As to the cross-examination factor, I first point out that in this instance, misidentification was the appellant's sole defense. Although it is generally true that through cross-examination the defendant is entitled to inquire into the witness' opportunity for observation, his capacity for observation, his attention and interest and distraction or diversion of attention, see *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir.1973), as well as establishing the time interval which passed between the occurrence of the event and the in court identification, and the effects of stress on the witness' ability to perceive, it is also true, as any experienced court room participant has witnessed, that "it is a matter of common experience that, once a witness has [identified] the accused at [a] lineup, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined then and there, before the trial." *United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967). Also see Wall, *Eyewitness Identification in Criminal Cases*. Thus, because eyewitness identification testimony is not only very believable and can wield considerable influence over the jury's decision to acquit or convict the accused, but because it is also not always reliable, and is flawed simply because of the normal and natural memory processes that occur whenever human beings acquire, retain, or attempt to retrieve information, the jury should be entitled to receive expert testimonial evidence that might supply knowledge or information that would not ordinarily be available to the trier of fact. I believe that when the State's case is dependent solely upon eyewitness identification testimony, and as pointed by Professor Loftus in her above titled book, expert witness testimony regarding the variables involved in eyewitness identification would be of extreme benefit and assistance to the average juror

in reaching a fair and just decision. Contrary to the conclusions reached by some courts, such expert testimony is not dedicated or directed to impeaching the identifying witness. The eyewitness expert is simply presenting testimony about the factors that affect the reliability of an eyewitness' account. He describes for the jury the studies that have been conducted on people's ability to perceive and recall complex events under stressful situations, and reports to the jury the results of those studies. With this information, the jurors are then in a better position to evaluate the identification evidence fully and properly.

Is it not true that the basic purpose of any evidence is to facilitate the acquisition of knowledge by the trier of fact, thus enabling it to reach a just determination? As Professor Loftus pointed out in her above book, "The system of evidence used in American courts rests on two axioms: only facts having rational probative or evidential value are admissible, and all facts having such value are admissible unless some specific policy forbids." Does an expert witness on eyewitness identification not meet these tests? He does not state that he believes a particular piece of testimony to be believable, accurate, or inaccurate. Rather, his task is to review the relevant psychological findings and enumerate the various factors affecting the reliability of eyewitness accounts. The jury decides what weight to give his testimony.

It is now a historical fact that numerous persons have been wrongfully convicted solely on the basis of mistaken eyewitness identification testimony, that the possibility of mistaken eyewitness identification testimony is always great, and that evidence of eyewitness identification has an overwhelming influence on jurors. Where the State's case is dependent solely upon eyewitness identification, I am unable to believe that the average juror is aware of the numerous variables that go to what caused the witness to make his or her identification of the accused. In this instance, I am unable to conclude that depriving the jurors of Dr. Horsch's testimony did not prevent the jurors from having the best possible degree of understanding eyewitness testimony. Note, "Did Your Eyes Deceive You?" Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 *Stan.L.Rev.* 969 (1977). Thus, considering the standard whether Dr. Hosch's testimony might have assisted the jury in determining an issue before them, I believe that his offered testimony was a proper subject for the jury, would have been of considerable assistance to the jury in resolving the issue whether the appellant was one of the robbers, and should have been admitted.

In conclusion, from a practical standpoint, what is the real difference in meaning between permitting the jury to hear expert testimony in connection with a courtroom reconstruction of an automobile accident, when there are twelve eyewitnesses to the accident, each of whom would relate the same version of how the accident happened, and expert eyewitness testimony going to the variables involved in eyewitness identification? At the moment, I cannot think of any. And yet, week after week in this State, such experts give testimony before juries in this State. Also see Lacy and Barzelay, *Scientific Automobile Accident Reconstruction* (1972 Edition). But at the same time, when not money, but a person's freedom is at stake, we refuse to permit the jury to hear expert eyewitness testimony on identification. We should admit such testimony.

For the above and foregoing reasons, I would grant appellant's first motion for rehearing, and thereafter would hold that the trial court erred in refusing to permit Dr. Hosch to testify, and that the court of appeals erred in sustaining the trial court's ruling. Because the majority denies appellant's motion to file his first motion for rehearing, I respectfully dissent.

MILLER, J., joins.