COURT OF APPEALS












 
 
 
  
 
 
 




COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 


 
 
  
 PATRICK
 RODRIQUEZ,
  
                             Appellant,
  
 v.
  
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-00-00532-CR
  
 Appeal from the
  
 161st District Court
  
 of Ector County, Texas 
  
 (TC# B-27,976) 
  
 
 


 

O P I N I O N

 

Patrick Rodriquez appeals his
convictions on one count of burglary of a habitation with intent to commit
sexual assault and two counts of sexual assault.  We affirm.

Summary of Evidence

Patrick Rodriquez was indicted on
three counts.  The first count was for
burglary of a habitation with intent to commit sexual assault.  The second and third counts were for sexual
assault.  Rodriquez pleaded not guilty to
all three counts.








According to the victim, using the
pseudonym AScooter,@ on October 26, 1999, she had gone
home during a lunch break.  While she was
in her bedroom, she heard the screen door, which was unlocked, open.  Scooter believed that it was Cliff, the man
she was living with, but it was not. 
Instead, it was Rodriquez.

Scooter stated that Rodriquez
approached her and began touching her. 
Despite Scooter=s attempts to thwart Rodriquez=s advances, Rodriquez penetrated her
anally and vaginally.  She testified that
she did not give Rodriquez consent for his actions.

Rodriquez admitted that he and
Scooter had relations, but he asserted that they had been consensual.  Thus, the  main point in contention at Rodriquez=s trial was whether the intercourse
had been consensual.

The State presented Leticia Harper, a
victim services coordinator for the Center for Crisis Advocacy, as an expert
witness to provide testimony relevant to the issue of consent.  Harper was taken on voir
dire.  Counsel for appellant asked Harper
about her education and whether she had an advanced degree in psychology or
medicine.  He asked her whether she had a
license as a nurse or professional counselor. 
Counsel asked Harper whether she knew the results of any legitimate
tests on Rape Trauma Syndrome or how often the theory had been tested.  And he asked her if she had written any
articles having to do with trauma or knew the potential rate of error of Rape
Trauma Syndrome.

Harper admitted that she did not have
any advanced degree in counseling or medicine. 
She had not written any articles regarding trauma.  Further, she could not give the potential
rate of error on Rape Trauma Syndrome and did not know how often the theory had
been tested.








At the end of the questioning,
counsel entered an objection that Harper was not a qualified expert under Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[1]  He stated, ANone of the things--if this is
specialized scientific knowledge that she relies on for an opinion, she doesn=t have a degree in it.@ 
He objected to the relevancy of Harper=s testimony to his client=s guilt or innocence.  He also objected that any probative value of
her testimony was outweighed by the testimony=s possibility of prejudice.

In response, the State argued that
Harper was offering nonscientific expert testimony.

Counsel=s objections were overruled and
Harper was allowed to testify that in her opinion, Scooter suffered from Rape
Trauma Syndrome.  The trial judge stated,
AFirst of all, with regard to this
rape trauma syndrome.  This is pretty
mainstream stuff.@  He declared that it
passed the test set forth in E.I. du Pont de
Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549 (Tex. 1995).  He also decided that based on Harper=s job skills and knowledge of the
witness, she was qualified to provide the testimony.  








At the conclusion of the trial, the
jury found Rodriquez guilty on all three counts.  It assessed punishment for each count at ten
years= confinement.  The judge ordered that the two sexual assault
counts be served consecutively and that service for the burglary of a
habitation count be concurrent with service for the
sexual assault counts.

Discussion

In his sole issue on appeal,
appellant argues that the trial court abused its discretion in allowing expert
testimony that Scooter suffered from Rape Trauma Syndrome.  He argues that Harper was not a qualified
witness and that as a result, her testimony was inadmissible; the testimony had
a substantial and injurious affect on him, so the error was harmful.  We disagree.

A trial court=s decision to allow or to exclude
evidence is reviewed for an abuse of discretion.  Montgomery v. State, 810 S.W.2d 372,
379 (Tex. Crim. App. 1990) (citing Marras v. State, 741 S.W.2d 395, 404 (Tex. Crim. App. 1987)). 
The decision will not be disturbed absent a clear abuse of
discretion.  Penry v. State, 903
S.W.2d 715, 762 (Tex. Crim. App. 1995).  That is, we will reverse only if the trial
court=s decision was clearly wrong and
unjust.

In order for evidence to be
admissible, it must be relevant, Tex. R.
Evid. 402, and its probative value must not be substantially
outweighed by the danger of unfair prejudice, Tex.
R. Evid. 403. 
Generally, witnesses are limited in the opinions or inferences to which
they may testify.  Tex. R. Evid.
701.  However, greater freedom is given
to experts to testify as to those matters.

Testimony by experts is allowed under
Tex. R. Evid. 702,
which states:








If
scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a
fact in issue, a witness qualified as an expert by knowledge, skill,
experience, training, or education may testify thereto in the form of an
opinion or otherwise.

 

Thus, we first note, expert testimony must aid the trier of fact. 
Secondly, the expert must be qualified to testify about the
subject.  As we stated in Calderon v.
State, 950 S.W.2d 121 (Tex. App.--El Paso 1997, no pet.), AIf the trial court finds that a
witness possesses special knowledge or expertise based on training, education,
or experience that will aid the trier of fact, it may
qualify the witness as an expert.@ 
Id. at 128.

Here, because consent was at issue,
statements regarding Scooter=s emotional state and Harper=s application of Rape Trauma Syndrome
to Scooter were relevant.  See Brown
v. State, 757 S.W.2d 739, 740 (Tex. Crim. App.
1988); id. at 743 (McCormick, J. concurring).  Appellant does not complain on appeal that
the first inquiry above was not satisfied. 
Instead, he complains of the second.

Appellant=s argument here is reflective of the
argument at trial, which relied on classification of Harper as a scientific
expert.  He argues, for instance, that
Harper offered no testimony as to the underlying scientific theory or technique
surrounding Rape Trauma Syndrome. 
Moreover, he points to Harper=s lack of a specialized degree as a
medical professional or professional counselor as evidence that she was
unqualified to apply the principles of Rape Trauma Syndrome or to testify about
it.








First, we note that there is nothing
that indicates that an expert will not be qualified if he or she lacks formal
education in the subject matter.  To the
contrary, Rule 702 allows an expert to be qualified through other means--such
as by knowledge, skill, experience, or training.  The Court of Criminal Appeals noted in Holloway
v. State, 613 S.W.2d 497 (Tex. Crim. App.
1981):

Merely
that the witness has professional credentials or occupational status in a
calling which relates to the matter in question is insufficient to qualify
him.  Rather, it must be shown that he
possesses special knowledge upon the specific matter about which his expertise
is sought. . . .  The special knowledge
which qualifies a witness to give an expert opinion may be derived entirely
from a study of technical works, or specialized education, or practical
experience or varying combinations thereof; what is determinative is that his
answers indicate to the trial court that he possesses knowledge which will
assist the jury in making inferences regarding fact issues more effectively than
the jury could do so unaided.

 

Id.
at 501 (footnotes omitted); see also Wyatt v. State, 23 S.W.3d 18, 27
(Tex. Crim. App. 2000) (A>The special knowledge which qualifies
a witness to give an expert opinion may be derived from specialized education,
practical experience, a study of technical works, or a varying combination of
these things.=@) (quoting Penry,
903 S.W.2d at 762); Roise v. State, 7
S.W.3d 225, 234 (Tex. App.--Austin 1999, pet. ref=d) (stating that a degree alone is
insufficient to qualify a witness as an expert but that there must be an
inquiry into actual qualification).








The burden to prove the admissibility
of an expert=s opinion lies initially with the
party offering such evidence.  Holloway,
613 S.W.2d at 501. 
In the present case, we believe that Harper was qualified to testify
about Rape Trauma Syndrome.  As she
stated during voir dire, she had been employed with
the Center for three years and had been a volunteer at the Lubbock Rape Crisis
Center for a year prior to that.  She had
received specialized training regarding rape trauma, and she detailed the
courses she had taken.  In addition,
Harper had taught classes on rape trauma to law enforcement.

Furthermore, we believe that the
State was offering Harper=s testimony for nonscientific--or Asoft science@ purposes.  See Weatherred
v. State, 15 S.W.3d 540, 542 n.5 (Tex. Crim. App.
2000) (distinguishing between Ahard@ and Asoft@ sciences, the latter of which are usually thought to include
the fields of psychology, economics, political science, anthropology, and
sociology).  Defense counsel=s objection is, at bottom, one aimed
at scientific evidence.  Kelly,
824 S.W.2d at 573 (listing nonexclusive factors to determine reliability of
scientific evidence).








The distinction between the tests for
scientific and nonscientific expert testimony was discussed in Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998), overruled on other grounds, State
v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999).  In
that case, the Court of Criminal Appeals applied the standards it set forth
regarding the admissibility of scientific expert testimony in Kelly v. State,
824 S.W.2d 568 (Tex. Crim. App. 1992), to
nonscientific expert testimony.  The
Court suggested that some hard science methods of validation, such as assessing
the potential rate of error, might be inappropriate for testing the reliability
of fields of expertise outside the hard sciences and therefore stated that when
addressing fields of study aside from the hard sciences, the Kelly
reliability standards would be applied with less rigor.  Nenno, 970 S.W.2d at 561, 562. 
It modified the Kelly test and then stated that the appropriate
questions as:  (1) whether the field of
expertise is a legitimate one; (2) whether the subject matter of the expert=s testimony is within the scope of
that field; and (3) whether the expert=s testimony properly relies upon
and/or utilizes the principles involved in the field.  Id. at 561.

Appellant concedes, in his
alternative argument, that Harper=s testimony may be viewed against the
soft science reliability test.  But
appellant then argues that Harper=s testimony should have been excluded
under the soft science analysis set forth in Nenno.  He argues that nothing in the record
established that Rape Trauma Syndrome was legitimate.  He also argues that the scope of Harper=s testimony, relative to her
qualifications, was Aunbounded.@  He believes that Ait cannot be established that Harper
relied upon or utilized the principles involved in this field.@ 
Appellant also argues that because the principles of the study of Rape
Trauma Syndrome were never identified, Harper=s testimony was improper under Nenno.

We believe that appellant waived
complaint that Harper=s testimony did not satisfy the Nenno
requirements.  Although counsel lodged an
objection after his questioning of the witness at voir
dire and also requested a running objection, he did not request an objection to
the witness and the testimony based on the Nenno
factors.  Nor can his objection be reasonably
construed as such.  Error was not
preserved.  See Tex. R. App. P. 33.1.








Moreover, even were error properly preserved, we believe the factors set forth
in Nenno were satisfied.  The trial court judge based his decision on
the legitimacy of Rape Trauma Syndrome on the argument that it is Apretty mainstream stuff.@ 
And there is evidence that Rape Trauma Syndrome has been relied on by
other courts.  See,
e.g., Borg-Warner Protective Servs. Corp. v. Flores, 955 S.W.2d 861,
865 (Tex. App.--Corpus Christi 1997, no pet.) (listing
testimony that a victim suffered from Rape Trauma Syndrome as evidence
presented at trial); Key v. State, 765 S.W.2d 848, 850 (Tex. App.--Dallas
1989, pet. ref=d) (citing article regarding Rape
Trauma Syndrome); Brown v. State, 757 S.W.2d 739, 743 (Tex. Crim. App. 1988) (McCormick, J. concurring) (citing
articles regarding Rape Trauma Syndrome and stating that evidence of a
victim=s emotional and psychological state
after an incident tends to buttress the victim=s version of the sexual assault).

Harper was then allowed to detail the
four stages of the syndrome both during voir dire and
in front of the jury.  She had worked
closely with Scooter, providing counseling and meeting with her on over twenty
different occasions since the incident occurred.  Harper stated that based on her experience
and training, Scooter exhibited signs consistent with a person suffering from
the syndrome and that she was a Atextbook case.@








We believe that the trial court could
reasonably have found Harper qualified as an expert.  The trial court did not act arbitrarily or
unreasonably in allowing Harper to testify as an expert.  The State adequately established her
knowledge of Rape Trauma Syndrome. 
Additionally, Harper=s testimony was sufficiently tied to the facts of the case to
aid the jury in resolving the dispute. 
Harper had worked with Scooter and, after detailing the symptoms of Rape
Trauma Syndrome, she applied her knowledge in her assessment of Scooter.  Thus, Harper=s testimony fell within the scope of
her expertise.

The trial court did not abuse its
discretion in allowing Harper=s testimony.

Conclusion

Accordingly, we overrule appellant=s issue and affirm the judgment of
the trial court.

 

                                                                        


SUSAN
LARSEN, Justice

September 5, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]The State, in responding to the objection, cited to Kelly v.
State, 824 S.W.2d 568, 573 (Tex. Crim. App.
1992).  We think the nature of
counsel=s
objection was sufficiently clear, even though the authority cited is civil.