TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-01-00328-CV







In the Matter of I. R. H.








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-20,821, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 After waiving his right to a jury trial, I.R.H. was adjudicated delinquent for criminal
mischief in an amount more than $1500 but less than $20,000. See Tex. Fam. Code Ann. § 54.03
(West Supp. 2002); Tex. Pen. Code Ann. §§ 28.03 (West Supp. 2002), .06 (West 1996). The
juvenile court placed I.R.H. on probation for eighteen months in his parents' custody and ordered
him to pay restitution in the amount of $2106. I.R.H. raises five issues on appeal. We conclude that
the juvenile court erred in overruling I.R.H.'s objection to the qualifications of an expert witness and
that the evidence was legally insufficient to support the judgment; we therefore reverse and render
judgment of acquittal.


BACKGROUND

 Michael Stafford, the complaining witness, lived on an eight-acre tract of land. 
Located on the back of his property were five abandoned vehicles that came with the purchase of the
land; Stafford intended to sell the parts of these junk cars. On February 3, 2001, Stafford was
changing the tire on a truck near his home when he heard smashing noises coming from the back of
his property. When he went to investigate, he saw I.R.H. and two others smashing the windows of
one of the abandoned vehicles with a large steel bar. The three left when they saw Stafford. Later,
after assessing the damage to the vehicles, Stafford discovered that several windows and windshields
on the vehicles had been smashed, and all had distinct round marks on them. After calling a
windshield repair shop, Stafford assessed the cost of replacing the damaged windows and
windshields at $2106.

 I.R.H. was subsequently charged with criminal mischief in an amount exceeding
$1500 but less than $20,000. I.R.H. waived his right to a jury and to a hearing before a juvenile
court judge; following a hearing before a juvenile court referee, the court adjudicated I.R.H.
delinquent, placed him on probation for eighteen months, and ordered restitution in the amount of
$2106, the cost of repairing the vehicles. (1) I.R.H. now appeals.


DISCUSSION

Fatal Variance

 By his first two issues, I.R.H. contends that a material variance exists between the
allegations in the State's petition and the proof adduced at trial and, therefore, the evidence is legally
and factually insufficient to sustain his adjudication of delinquency. 

 In criminal cases, a variance between a charging instrument and evidence adduced
at trial has been held to constitute a legal sufficiency issue. Gollihar v. State, 46 S.W.3d 243, 257
(Tex. Crim. App. 2001). A sufficiency-variance issue arises when the State proves the defendant
guilty of a crime, but proves the commission of the crime in a manner that varies from the allegations
in the indictment. Such a variance, if material, may render the evidence insufficient to sustain the
conviction. Id. at 247.

 In a juvenile proceeding, because the rules of civil procedure govern, a fatal variance
between the pleadings (2) and proof is determined by considering whether the variance is substantial,
misleading, and prejudicial. In re O.C., 945 S.W.2d 241, 243 (Tex. App.--San Antonio 1997, no
writ) (citing Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 937 (Tex. 1980)); In re
A.B., 868 S.W.2d 938, 942 (Tex. App.--Fort Worth 1994, no writ) (citing Winfield v. Renfro, 821
S.W.2d 640 (Tex. App.--Houston [1st Dist.] 1991, writ denied)). Criminal mischief is defined by
the penal code as follows: "A person commits an offense if, without the effective consent of the
owner: (1) he intentionally or knowingly damages or destroys the tangible property of the owner
. . . ." Tex. Pen. Code Ann. § 28.03(a)(1). The State's petition alleges that I.R.H. "intentionally and
knowingly damage[d] or destroy[ed] tangible property, to wit: five (5) motor vehicles, without the
effective consent of Michael Stafford, the owner, and thereby caused pecuniary loss to said owner
in the amount of $1,500.00 but less than $20,000.00." I.R.H. argues that because the State specified
in its petition that I.R.H. damaged or destroyed five "motor vehicles," the State was required to offer
proof that the tangible property damaged or destroyed were motor vehicles, as opposed to general
"vehicles." Citing the transportation code, I.R.H. argues that a vehicle must be self-propelled to fall
within the definition of a motor vehicle. See Tex. Transp. Code Ann. § 541.201(11) (West Supp.
2002). He claims that because the five vehicles on Stafford's property were inoperable and were
essentially junk cars, (3) the State failed to satisfy its burden, and its failure to present evidence
corresponding to the language used in the petition constitutes a fatal variance.

 Assuming without deciding that there is a variance between the State's petition and
the evidence adduced at trial, I.R.H. does not describe how this variance is substantial, misleading,
and prejudicial. There is no indication in the record that I.R.H. did not know what property he was
accused of destroying or damaging, or that he was surprised by the proof at trial. Furthermore, I.R.H.
does not allege that he was unable to prepare a defense because of this variance. We thus hold that
any variance that may have existed between the State's petition and the evidence presented was not
fatal and overrule I.R.H.'s first two issues. (4)

Expert Witness Qualifications

 By his fifth issue, I.R.H. argues the juvenile court erred in overruling his objection
that Stafford was not qualified as an expert to testify regarding the cost of repairing the vehicles. (5) 
During the State's direct examination of Stafford, the State asked Stafford if he knew the amount
of loss that he suffered as a result of the destruction of his property. I.R.H. objected based on
hearsay and speculation; the juvenile court overruled both objections. I.R.H. then requested to take
the witness on voir dire, and the juvenile court acquiesced. On voir dire, I.R.H. challenged
Stafford's qualifications to testify regarding the cost of repairs to the vehicles:


Q: Now, Mr. Stafford, you had to prepare for this trial today, didn't you?


A: Yes.


Q: And as a profession, your profession -- 


THE COURT: The voir dire is about the value of the windows.


[DEFENSE COUNSEL]: Yes, Your Honor.


THE COURT: So ask him questions about that.


[DEFENSE COUNSEL]: So you had to find out how much those windows cost?


A: Yes.


Q: And in the process of finding out how much those windows cost, you called a
windshield repair place to price those windows?

A: Correct.


Q: And when you went to the windshield repair place -- by profession you install
septic tanks -- you did not know what the value of those windows were, did
you?


A: I called down to get the prices of them, yes.


Q: And you did not know what the value was?


A: No. 


Q: Okay. And they told you the replacement value of those windshields was
$2,100?


A: Of all the windows.


Q: And you believe that you're entitled to that replacement value?


A: Yes.



Based on this exchange, defense counsel lodged a third objection to Stafford's testimony: "Your
Honor, the witness is not qualified as an expert with regard to the windshields and therefore cannot
testify as to their value." The juvenile court overruled the objection, implying that Stafford was
qualified as an expert regarding the value of windshield repair. Stafford subsequently provided the
following testimony during direct examination by the State:


Q: So based on the research you've done to assess the amount of losses you
suffered as a result of this destruction, your damage was $2,106?


A: Yes, I believe -- yes.


Q: And that is the cost of repairing the windshields that were damaged, correct?


A: All the windows, yes.



 In response to I.R.H.'s issue on appeal, the State urges that I.R.H. has waived his
complaint because he initially elicited the complained-of testimony during his voir dire of the
witness and therefore cannot object to Stafford's subsequent testimony during direct examination
by the State. We disagree.

 The purpose of voir dire examination is to afford a defendant the opportunity to
determine the foundation of an expert's opinion without fear of eliciting damaging hearsay or other
inadmissible evidence in the jury's presence. Tex. R. Evid. 705(b); Alba v. State, 905 S.W.2d 581,
587-88 (Tex. Crim. App. 1995) (citing Goss v. State, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992)). 
A Rule 705(b) hearing may also supply defense counsel with sufficient ammunition to make a timely
objection to the expert's testimony on the ground that it lacks a sufficient basis for admissibility. 
Alba, 905 S.W.2d at 588. The rule does not limit the use of this procedural device to jury trials, and
we have found no authority suggesting that voir dire during a trial to the court should be treated
differently. Accordingly, we hold that I.R.H. did not waive error by eliciting testimony from Stafford
during the voir dire examination.

 The significance of Stafford's testimony is apparent when considered in the context
of the offense charged. The offense of criminal mischief includes the element of the value of the
injury inflicted. (6) Gallardo v. State, 321 S.W.2d 581, 582 (Tex. Crim. App. 1959). Generally, the
extent or amount of injury is the difference in the market value of the property before and after its
injury--the diminution in value of the property. See Wise v. State, 494 S.W.2d 921, 924 (Tex. Civ.
App.--Fort Worth 1973, no pet.) (quoting Milby Auto Co. v. Kendrick, 8 S.W.2d 743, 744 (Tex. Civ.
App.--Galveston 1928, writ dism'd w.o.j.)). Section 28.06 of the penal code provides two methods
for determining the diminution in property value caused by the criminal mischief; the method used
depends on whether the property was damaged or destroyed. Tex. Pen. Code Ann. § 28.06. If the
property was damaged, the method of determining the pecuniary loss is to establish the cost of
repairing the property to restore it to the condition that it was in immediately before the damage
occurred. Wise, 494 S.W.2d at 924; Tex. Pen. Code Ann. § 28.06(b). (7) "If the injured property is
restored to its condition prior to its injury, its market value would ordinarily be restored, and the cost
of such restoration would be identical with the difference between its market value before and after
its injury." Wise, 494 S.W.2d at 924 (quoting Milby Auto Co., 8 S.W.2d at 744).

 In this case, although the State's petition alleged that I.R.H. damaged or destroyed
the property, the State only produced evidence of the cost of repairing the vehicles; (8) thus, the State
proceeded under section 28.06(b), which addresses repair of damaged property. In order to
determine the cost of repairing damaged property, the property need not actually be repaired, see
Elomary, 796 S.W.2d at 193, but if it is not, expert testimony is required to establish the cost of
repair. Id., (lay opinion of amount of damage, without further evidence, is insufficient to satisfy
section 28.06(b)); Nixon v. State, 937 S.W.2d 610, 613 (Tex. App.--Houston [1st Dist.] 1996, no
pet.) (same); Sebree v. State, 695 S.W.2d 303, 305 (Tex. App.--Houston [1st Dist.] 1985, no pet.)
(same).

 With these principles in mind, we now turn to the juvenile court's overruling of
I.R.H.'s objection to Stafford's qualifications as an expert and the admission of his testimony
regarding the cost of repairing the vehicles. If scientific, technical, or other specialized knowledge
will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education may testify in that
regard in the form of an opinion or otherwise. Tex. R. Evid. 702. The person proffering the
purported expert's testimony must demonstrate that the witness possesses the requisite qualifications
of an expert. See Penry v. State, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995); Holloway v. State,
613 S.W.2d 497, 501 (Tex. Crim. App. 1981). The special knowledge that may qualify a witness
as an expert may be derived from a study of technical works, specialized education, practical
experience, or varying combinations of these things. Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim.
App. 2000); Holloway, 613 S.W.2d at 501. The trial court exercises considerable discretion in
determining whether to admit expert testimony on the bases provided in the rule, and that decision
will not be disturbed absent a showing of an abuse of that discretion. Alvarado v. State, 912 S.W.2d
199, 216 (Tex. Crim. App. 1995); Kerr v. State, 921 S.W.2d 498, 502 (Tex. App.--Fort Worth 1996,
no pet.). 

 The State did not attempt to produce any evidence to qualify Stafford as an expert. 
There is no evidence that Stafford had any experience in windshield repair, and there is no evidence
that he acquired specialized knowledge of the cost of windshield repair. Indeed, though the State
asked Stafford if he reached the $2106 figure based on his "research," it is apparent that this figure
was based on a single estimate provided by a third party. During cross-examination, Stafford
admitted that he had called two windshield repair shops to obtain estimates for the repair of the
windows on the vehicles. One of those shops provided an undisclosed estimate that did not include
installation of the windows. The second repair shop provided the $2106 figure. Stafford did not
provide a name of the person to whom he spoke or of the shop he called. He did not provide a
written statement from the shop. He did not provide the location of the shop. And there is no
indication that the shop even observed the state of the junk vehicles before providing an estimate;
the estimate was provided over the phone, according to Stafford. We conclude that Stafford did not
possess the requisite special knowledge to testify as an expert and the juvenile court erred in
allowing Stafford to provide expert testimony regarding the cost of repairing the vehicles.

 Because the error is not constitutional, we will only reverse if it affected I.R.H.'s
substantial rights; otherwise, the error must be disregarded. See Tex. R. App. P. 44.2(b); see also
In re C.R., 995 S.W.2d 778, 785 (Tex. App.--Austin 1999, pet. denied). To make this
determination, we must decide whether the error had a substantial or injurious effect on the juvenile
court's finding. Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We must consider
the entire record, including any testimony or physical evidence admitted for the fact finder's
consideration, the nature of the evidence supporting the finding, the character of the alleged error,
and how the alleged error might be considered in connection with other evidence in the case. Id.

 Stafford's testimony was the only evidence presented by the State regarding the cost
of repairing the damaged vehicles. Even apart from Stafford's lack of standing as an expert, the cost
of repairing broken windows on junk vehicles that Stafford intended to sell for used parts is not an
accurate measure of the diminution in the cars' value. When asked if the parts on the vehicles were
worth more than the vehicles as a whole, Stafford explained, "If you would sell them as a whole,
you'd probably get junk. In other words, you'd take them and you would get a scrap price for them." 
He agreed that "scrap price is basically the metal value." Stafford also agreed that the windows and
windshields could not be fixed. Moreover, Stafford did not have titles to the vehicles and did not
intend to operate the vehicles or sell them as operating vehicles. He had "no idea whether or not [the
vehicles] were running. In other words, there's motors in a few of them, yes, but I did not personally
use them, no." Officer Sean Freddie of the Travis County Sheriff's Office also testified that he did
not believe any of the vehicles were operable and that a few of the cars had missing doors. 

 Although the statute does not require that the damaged property actually be repaired,
see Elomary, 796 S.W.2d at 193, the statute presumes that the property is capable of being repaired
and that the value of the property can thereby be restored; the cost of the repair should indicate the
difference between the market value of the property before and after the damage, or the diminution
in value. Before the junk vehicles in this case were damaged, according to Stafford their only value
was as scrap metal unless he sold them for their parts. If the value of the junk vehicles before the
damage was for parts or scrap metal, the cost of new windows and windshields does not represent
the diminution in value of the junk vehicles caused by the damage; it is not indicative of the
difference in market value of the junk vehicles before and after the vandalism.

 Furthermore, no reasonable person would attempt to restore these vehicles by
replacing the windows and windshields with brand new ones. Stafford testified that the windows
and windshields could not be repaired and the vehicles were not operable. While operable vehicles
may require replacement of smashed windows, the cost of replacing the windows on these junk
vehicles does not accurately measure the diminution in value of the vehicles. There is no evidence
that the damage to the windows and windshields of these junk vehicles diminished the scrap metal
value of the vehicles or their parts; replacing the windows and windshields would not restore the
scrap metal value or the value of the used parts. The juvenile court relied on Stafford's testimony
by ordering restitution in the amount of $2106, the cost of repair according to Stafford. We cannot
say that the juvenile court's overruling of I.R.H.'s objection to Stafford's qualifications as an expert
did not have a substantial or injurious effect on the juvenile court's judgment. We therefore sustain
I.R.H.'s fifth issue.


Legal Sufficiency of Evidence

 By his third issue, I.R.H. claims the evidence is legally insufficient to show that the
amount of pecuniary loss attributable to his actions was more than $1500 but less than $20,000. 
Adjudications of delinquency in juvenile cases are based on the criminal standard of proof. See Tex.
Fam. Code Ann. § 54.03(f). Therefore, we review adjudications of delinquency in juvenile cases by
applying the standards applicable to challenges to the sufficiency of the evidence in criminal cases. 
See In re E.P., 963 S.W.2d 191, 193 (Tex. App.--Austin 1998, no pet.).

 In reviewing a legal sufficiency challenge, we view all the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
elements of the offense beyond a reasonable doubt. See id. (citing Jackson v. Virginia, 443 U.S. 307
(1979)). Our review includes consideration of all evidence, both admissible and inadmissible. 
Dewberry v. State, 4 S.W.3d 735, 753 (Tex. Crim. App. 1999). We measure the sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct jury charge. Gollihar,
46 S.W.3d at 253; Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If our review of
the record indicates that the evidence is legally insufficient to support the juvenile court's judgment,
we must reverse and render a judgment of acquittal.

 Although we have concluded that Stafford was not qualified to testify as an expert
regarding the cost of repairing the junk vehicles and that the testimony should have been excluded,
we must include inadmissible testimony in our legal sufficiency review of the evidence. Stafford's
testimony was the only evidence presented of the amount of pecuniary loss caused by the damage
to the junk vehicles. The court of criminal appeals has held that an opinion or estimate of damage
by an individual who is not competent to give an expert opinion as to repair costs, such as Stafford,
without further evidence is insufficient to prove the cost of repairs as required by section 28.06(b)
of the penal code. Elomary, 796 S.W.2d at 193 (agreeing with appellate court's holding in Sebree). 
The court distinguished between an individual merely "stating from hearsay what someone else said
what the damages might be, from an individual who is shown to be qualified to give his or her expert
opinion of what the fair market value of the cost of repairs to the damaged property might be." Id.
at 194. In this case, Stafford's testimony is equivalent to an individual merely stating from hearsay
what someone else said the damages might be, and without further evidence his lay testimony is
legally insufficient to prove the cost of repairs.

 Although no other evidence was presented as to the cost of repair, the State presented
some evidence that the vehicles were damaged. Stafford testified that a Buick Regal Limited had
a smashed front windshield. Two rear windows and a passenger window were smashed on a Ford
Bronco. A Mercury Marquis had a damaged windshield, two smashed door windows, and a
shattered rear glass. The windshield, driver's door window, and rear sliding glass window had been
damaged on a Ford pickup. And finally, an Oldsmobile Delta 88 sustained damage to its windshield
and a vent window. Stafford further testified that although the vehicles were not new and had been
sitting on his property to be sold for parts, all the windows had been intact before I.R.H. and his
companions smashed them. Officer Freddie testified that he observed the broken windows and dents
in the vehicles, but he did not attempt to estimate the cost of repairing the damage. In addition, the
State presented photos of the vehicles; at the time the photos were taken, however, further damage
had been done to the vehicles, and one of the photos depicted the additional damage.

 This evidence is no evidence of the cost of repairing or restoring the value of the parts
or the scrap metal value of the junk vehicles; it does not reflect the difference in the market value
of the junk vehicles before and after the damage. Furthermore, the evidence does not support
Stafford's testimony that the diminution in value to these junk vehicles is equivalent to the cost of
replacing the windows and windshields, or $2106. See Sebree, 695 S.W.2d at 305 (lay witness's
description of damage to her vehicle and estimate of cost of repair held legally insufficient). But see
Nixon, 937 S.W.2d at 613 (holding that after reviewing all evidence, including photos of "appellant's
truck totally crashed through the rear of the brick home" and of furniture and other items destroyed,
any rational trier of fact would be convinced that such extensive damage would cost in excess of
$750 to repair). Viewing the evidence in the light most favorable to the verdict, we conclude that
no rational trier of fact could have found beyond a reasonable doubt that the amount of pecuniary
loss to the damaged vehicles exceeded $1500. We sustain I.R.H.'s third issue. (9)

CONCLUSION

 We overrule I.R.H.'s first and second issues. Because we conclude that the juvenile
court erred in overruling I.R.H.'s objection to Stafford's qualifications to testify as an expert, we
sustain I.R.H.'s fifth issue. We further hold that Stafford's lay-witness testimony, without further
evidence of cost of repair, is legally insufficient to support the juvenile court's finding of a pecuniary
loss in an amount greater than $1500 but less than $20,000. We therefore reverse the juvenile
court's judgment and render a judgment of acquittal. (10) 



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Rendered

Filed: August 8, 2002

Do Not Publish

1. Both the adjudication hearing and the dispositional hearing were held before a juvenile
court referee, whose findings and recommendations were adopted by the juvenile court judge. See
Tex. Fam. Code Ann. § 54.10(a), (b) (West Supp. 2002).
2. Section 53.04 of the family code sets forth the requirements for the State's petition in a
juvenile proceeding: "The petition must state: (1) with reasonable particularity the time, place, and
manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts." 
Tex. Fam. Code Ann. § 53.04(d)(1) (West 1996). 
3. The juvenile court acknowledged that the vehicles were inoperable. Stafford only intended
to use the vehicles for parts; he did not hold titles to the vehicles. 
4. We note that the court of criminal appeals has constructed a test for identifying material
variances in criminal cases: 


A variance between the wording of an indictment and the evidence presented at
trial is fatal only if "it is material and prejudices [the defendant's] substantial
rights." When reviewing such a variance, we must determine whether the
indictment, as written, informed the defendant of the charge against him
sufficiently to allow him to prepare an adequate defense at trial, and whether
prosecution under the deficiently drafted indictment would subject the defendant
to the risk of being prosecuted later for the same crime.


Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (quoting United States v. Sprick, 233
F.3d 845, 853 (5th Cir. 2000)). Even under the Gollihar standard, I.R.H. has not shown the
existence of a material variance. There is no evidence that he was unable to prepare an adequate
defense at trial or that he would be subject to the risk of being prosecuted later for the same crime. 
See Santana v. State, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001) (if prosecuted again, defendant
may avail himself of entire record and not merely charging instrument).
5. I.R.H. also argues that the admission of Stafford's testimony constituted hearsay and
violated his constitutional right to confrontation under both the federal and state constitutions. 
I.R.H. did not object during the trial based on his constitutional right of confrontation, and has
therefore waived any error based on this assertion. See Tex. R. App. P. 33.1(a). Because we are
reversing based on Stafford's lack of qualifications to testify as an expert, we need not reach I.R.H.'s
hearsay complaint. See Tex. R. App. P. 47.1.
6. The amount of pecuniary loss determines the punishment range for the offense. See Tex.
Pen. Code Ann. § 28.03 (West Supp. 2002). 
7. The statute provides: "The amount of pecuniary loss under this chapter, if the property is
damaged, is the cost of repairing or restoring the damaged property within a reasonable time after
the damage occurred." Tex. Pen. Code Ann. § 28.06(b).
8. We note that Stafford testified that the windows and windshields on the vehicles were
"destroyed" and testified as to the cost of replacing the windows and windshields; however, the
State's petition alleges that the vehicles were damaged or destroyed. The State did not attempt to
prove that the vehicles were destroyed, only damaged.
9. There is no evidence that the cost of repair is not ascertainable, so section 28.06(d) does
not apply. See Tex. Pen. Code Ann. § 28.06(d) (if amount of loss cannot be ascertained, amount is
deemed to be greater than $500 but less than $1500); see also Phillips v. State, 672 S.W.2d 885, 887
(Tex. App.--Dallas 1984, no pet.) (requiring evidence that amount of loss cannot be ascertained);
In re M.T.B., 567 S.W.2d 46, 47 (Tex. Civ. App.--El Paso 1978, no writ) (same). 
10. Because we are reversing and rendering judgment, we need not reach I.R.H.'s remaining
issue. See Tex. R. App. P. 47.1.