In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00034-CR
_____

THE STATE OF TEXAS, Appellant

V.

SYLVIA FLORES, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR 30195-A

**MEMORANDUM OPINION**

The State appeals from the trial court's granting of Sylvia Flores's application for writ of habeas corpus. Pursuant to a plea bargain, Sylvia Flores pleaded guilty to the felony offense of hindering apprehension. *See* Tex. Penal Code Ann. § 38.05 (West 2011). The trial court deferred adjudication of guilt and placed her on unadjudicated community supervision for seven years. She filed a motion for new trial which was overruled by operation of law. Flores did not file a direct appeal of the deferred adjudication order. Rather, she filed an application for

writ of habeas corpus, alleging that the ineffective assistance of her trial counsel rendered her guilty plea involuntary. The trial court held a hearing regarding the habeas and granted the application. We affirm.

## Standard of Review

Habeas corpus petitions in non-capital cases fall under Chapter 11 of the Texas Code of Criminal Procedure. Article 11.072 is the applicable habeas provision governing this case. It provides a procedure for a writ of habeas corpus in felony and misdemeanor cases in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 1 (West Supp. 2013). The applicant has the burden to prove by a preponderance of the evidence that she is entitled to relief. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In an article 11.072 habeas case, the trial judge is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). As the Court of Criminal Appeals has explained, "[t]here is less leeway in an article 11.072 context to disregard the findings of a trial court." *Ex parte Garcia*, 353 S.W.3d at 788. "[T]he appellate court affords almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *See*

*Guerrero*, 400 S.W.3d at 583. Further, an "applicant's live, sworn testimony is a sufficient basis for upholding a decision to grant relief in an Article 11.072 habeas proceeding because the trial judge may believe any or all of a witness's testimony." *Guerrero*, 400 S.W.3d at 583. When, as here, the habeas court has made findings of fact and conclusions of law in support of its order, we review the trial court's order for an abuse of discretion. *Ex parte Skelton*, No. 04-12-00066-CR, 2014 WL 2198379, at *3 (Tex. App.—San Antonio May 28, 2014, no pet. h.) (op. on reh'g) (citing *Ex parte Garcia*, 353 S.W.3d at 787-88) (adopting the abuse of discretion standard set out in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) for appellate review of article 11.072 habeas proceedings).

Habeas corpus "is reserved for extraordinary equitable matters when no other legal remedy is available; it is not merely another layer of, nor a substitute for, an appeal." *Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012). A habeas corpus review generally involves a two-pronged inquiry. *See Ex parte Weinstein*, 421 S.W.3d 656, 664-65 (Tex. Crim. App. 2014). The reviewing court first determines if the applicant has established a cognizable constitutional violation. *Id*. If a constitutional violation is shown, the reviewing court then determines whether the error harmed the applicant. *Id*.

## Plea Hearing

During the initial segment of the plea hearing, the trial judge asked Flores if she was a United States citizen. Flores stated, "Yes[.]" At a later point in the proceeding, the following colloquy occurred:

> The Court: Ms. Flores, to the information charging you with the third degree felony offense of hindering apprehension, how do you plead, ma'am? Guilty or not guilty?
> The Defendant: No, sir.
> Defense Counsel: At this point are you pleading guilty saying you did it or not guilty saying you didn't do it?
> The Defendant: No.
> Defense Counsel: You're saying "no"?
> The Defendant: No.
> The Reporter: Speak up.
> Defense Counsel: Say again.
> The Defendant: I say I understand. No.
> The Court: You're pleading not guilty?
> Defendant: No.
> The Court: You're not not pleading not guilty or--are you pleading guilty or not guilty?
> The Defendant: Not guilty.
> The Court: Pardon me?
> Defense Counsel: Not guilty?
> The Defendant: No.
> The Court: All right. That ends that. Check with your other client before we proceed on doing a useless thing.
>                     (A recess was taken)
> The Court: . . . I understand that we need an interpreter. Come up, Mr. Interpreter. State your full name, please.
> Interpreter: Orlando Teran.

With an interpreter present, the plea hearing continued. The trial court again inquired about citizenship, and Flores again indicated she was a citizen of the

4

United States. The trial judge admonished her regarding competency and the range of punishment for the charged offense. Flores answered in the affirmative when asked if the waivers (waiver of 10 day trial preparation for counsel and waiver of the reading of the indictment) were explained to her, and if she understood them. Flores also answered in the affirmative that the document entitled "Stipulations, Waivers & Admissions" was read to her in Spanish and she understood it, that she signed the document, and, that by signing it, confessed her guilt in the case. The trial attorney stated he went over the document with Flores. She pleaded guilty to the offense.

Before the plea hearing ended, the trial judge asked Flores's trial attorney whether he received assistance in conversing with Flores from someone who could translate everything that he said into Spanish. The attorney stated that Flores's daughter had translated for him prior to the plea hearing, and he was satisfied that Flores understood everything he had explained to her. The trial attorney also indicated that he was satisfied that Flores had the ability to consult with him with a reasonable degree of rational understanding and to assist him in preparing any defense that she had.

## Habeas Petition

In her habeas petition to the trial court, Flores argued that "plea counsel provided ineffective counsel leading to Applicant's involuntary plea." When entering a plea, a defendant is entitled to effective assistance of counsel. *See Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). In order to be entitled to habeas relief based on ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that counsel's performance was deficient and that the deficient performance prejudiced her defense. *See id*. (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Flores contends that her trial counsel did not warn her of the deportation consequences of her guilty plea, as required by *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the United States Supreme Court held that an attorney "must inform her client whether his plea carries a risk of deportation." 559 U.S. at 374. The Court also set forth guidelines for assessing an ineffective assistance of counsel claim that challenges the sufficiency of the legal advice pertaining to immigration consequences. *Id*. at 366-68. If the relevant immigration law "is not succinct and straightforward" as to whether a plea will result in deportation, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."

*Id.* at 369. However, when the deportation consequence is truly clear, the duty to give correct advice is equally clear. *Id.* (finding that failure to fulfill duty constitutes "constitutional deficiency to satisfy the first prong of *Strickland*"); *see also Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Padilla*, the Court concluded that the relevant immigration statute was "succinct, clear, and explicit" in defining Padilla's deportation as mandatory. 559 U.S. at 368-69.

## Cognizability

For a court to reach the merits of an applicant's claim on habeas corpus, the applicant's claim must be cognizable on habeas corpus. *See Ex parte Tovar*, 901 S.W.2d 484, 486 (Tex. Crim. App. 1995); *Ex parte McLain,* 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) ("A threshold determination in any post[-]conviction habeas corpus application is whether the claim presented is cognizable by way of collateral attack."). Habeas corpus is available only for violations of constitutional or fundamental rights and jurisdictional defects. *Ex parte Ramey*, 382 S.W.3d 396, 397 (Tex. Crim. App. 2012). In issue one, the State argues that Flores should have appealed the deferred adjudication order rather than waiting to file an application for writ of habeas corpus. We consider this a challenge to the cognizability of Flores's application for writ of habeas corpus.

7

Ordinarily, when the claim involves ineffective assistance of counsel, a reviewing court will rarely be provided the opportunity to make its determination on direct appeal with a record capable of providing an evaluation of the merits of the claim; therefore, a direct appeal is usually inadequate to develop such a claim. *See Lopez v. State,* 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *see also Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004) (Claims of ineffectiveness are frequently raised on direct appeal without the benefit of an adequate record, and then are re-urged in application for writ of habeas corpus with an adequately developed record in post-conviction evidentiary hearing.); *Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). Furthermore, a motion for new trial is not an available remedy in a deferred adjudication context. *See Donovan v. State*, 68 S.W.3d 633, 636-37 (Tex. Crim. App. 2002).

Given that the record below is not sufficiently developed to support an ineffectiveness claim on direct appeal, and that Flores's claim may be substantiated through additional evidence gathered for a habeas corpus proceeding, we conclude that Flores is not precluded from pursuing her claim of ineffective assistance of counsel in her habeas petition. *See Ex parte Nailor*, 149 S.W.3d at 130-31; *Bone*,

77 S.W.3d at 833; *see also Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (ineffective assistance of counsel claims cognizable on habeas review).

Next, the State argues that the trial court's order granting Flores's habeas corpus relief gave her more relief than was necessary to preserve her rights. We disagree. The trial court granted Flores's request for habeas relief and set aside the deferred adjudication order. The trial court then states, the "complaint and information/indictment charging Applicant with the felony offense of hindering apprehension is reinstated, and Applicant is [o]rdered to answer such charge as required by law." She received no greater relief than she would have received had the matter been reversed on direct appeal and remanded to the trial court. We overrule issue one.

### Habeas Corpus Relief

In issue two, the State argues the trial court abused its discretion in granting Flores's request for habeas relief because Flores's guilty plea was knowingly and voluntarily made. The State points out that during the plea hearing Flores twice answered "yes" (once without the assistance of an interpreter and once with an interpreter) when the trial court inquired if she is a United States citizen. The State also points to her signature and initials, which appear on the plea papers (including

the section pertaining to citizenship status and possibility of deportation), as evidence that her plea was knowingly and voluntarily made.

In her habeas petition, Flores stated that she is a "native Spanish speaker" and that her trial attorney does not speak Spanish. Her petition also alleged that during the interview with her counsel prior to the plea hearing and during the plea hearing itself, communication with her attorney was through her daughter, a co-defendant, who, though bilingual, could not translate legal documents and terminology. Flores further asserted that her trial attorney never admonished her and never explained to her that there could be immigration consequences to a plea of guilty. She maintained that she did not understand the difference between the status of "legal resident" and the status of "United States citizen," and that the lack of communication (because of a language barrier) between Flores and her attorney rendered her counsel's assistance ineffective and caused her guilty plea to be involuntary.

### Evidence At the Habeas Hearing

Various witnesses testified at the habeas hearing. Appellee's trial attorney testified and admitted that he does not speak Spanish, and he explained that he did not bring an interpreter with him to the jail to talk with Sylvia because he relied upon her nineteen-year-old daughter Yasmin, a co-defendant, to translate and assist

10

him at the jail in communicating with appellee. He testified he did not ever ask to see Sylvia's identification or other documents. He stated he thought she was a citizen because she told him she is a U.S. citizen. He testified he "trusted [Flores] to know her status." According to the attorney, the daughter translated plea papers to appellee before the plea hearing started. Although the trial attorney initially testified that the interpreter (Orlando Teran) translated the plea papers at the plea hearing for appellee, the attorney stated later in the habeas hearing that he did not recall whether Teran went over the plea papers with appellee. The trial attorney further admitted that a non-English speaker frequently is confused about the difference between a legal permanent resident status and being a United States citizen.

Yasmin, Flores's daughter, testified at the habeas hearing. Although a citizen of the United States, she explained she was not aware that there is a difference between being a legal permanent resident and being a U.S. citizen. She testified she cannot "really make a full-blown conversation" in Spanish. She described her efforts at Spanish as "chop Spanish." Although Yasmin testified she translated at the jail for her mother, she also stated that she does not know the meaning of the word "admonishment" in the plea papers. Yasmin also testified when she was at the plea hearing she saw Teran translate papers to her mother.

11

Flores testified that she communicated with her trial attorney at the jail through her daughter Yasmin. Flores indicated that Yasmin did not explain or read the plea papers to her (Flores) before Flores pleaded guilty, and she did not know what she was initialing. Sylvia stated that her trial attorney never asked her about her immigration status. She testified that it was her belief that being in the country legally and being a citizen of the country had the same meaning. At the habeas hearing, Sylvia testified her immigration status is that of a resident. She further stated that if she had known the immigration consequences of her guilty plea, she would not have pleaded guilty.

Orlando Teran, a probation officer, was the last to testify at the habeas hearing. He has spoken Spanish all his life. As a probation officer, he is familiar with a few legal terms. He indicated, however, he is not a certified court translator. Teran explained that he was asked to translate during appellee's plea hearing. He stated that he did not translate any documents to Sylvia Flores. His only translation was the testimony in court on the record. Teran testified he did not go over the plea papers with Sylvia Flores, and he did not translate any of the plea papers to her. And, he stated that before Flores's guilty plea, he did not ask her about her immigration status. Teran further testified that he has heard that it is a common

mistake among people with legal status to incorrectly state their status as being a citizen when that person is only a legal resident.

## Analysis

Flores contends that the offense to which she pleaded guilty was a deportable offense, and thus, under *Padilla*, her trial counsel had a duty to inform her of the consequences of pleading guilty, and he failed to do so. *See Padilla*, 559 U.S. at 367-74. The written plea papers, signed and initialed by Flores, contain the following admonishment: "If you are not a citizen of the United States of America, a plea of guilty or nolo contendere will subject you to deportation, exclusion from admission to the county or denial of naturalization under federal law." The record contains conflicting testimony as to whether this admonishment was translated for Flores.

After granting the application for writ of habeas corpus, the judge set out, among others, the following Findings of Fact:

> Trial counsel does not speak Spanish. [Flores] does not speak English. At all times during his representation, trial counsel communicated with [Flores] through her daughter. While [Flores's] daughter is bilingual, she possesses no certification as a legal translator, nor is she capable of translating legal documents and terminology.
>
> Trial counsel did not advise [Flores] of the immigration consequences of her plea of guilty because trial counsel was unaware of [Flores's] immigration status."

The trial court did not advise [Flores] of the collateral consequences of her plea of guilty; as the trial court was never advised of [Flores's] true immigration status.

At no time did Mr. Teran discuss or translate the plea papers with [Flores] or the admonishments. . . .

Because the minimum sentence that [Flores] could have received was confinement for two years, [Flores] was convicted of an "aggravated felony" rendering her subject to deportation under the Immigration and Nationality Act. Moreover, federal law treats deferred adjudication as a conviction.

Had [Flores] been properly advised of the immigration consequences of her plea, a reasonable probability exi[s]ts that [Flores] would not have pled guilty and would have insisted on a trial.

In this article 11.072 habeas, the trial court was free to consider the testimony of the witnesses, weigh it, and arrive at a conclusion about its reliability. *See Ex parte Garcia*, 353 S.W.3d at 787; *see also Ex parte Guerrero*, 400 S.W.3d at 583 (Applicant's "live, sworn testimony is a sufficient basis" to uphold the Court's grant of relief.). Furthermore, the trial court was free to believe that no one translated the plea papers containing the admonishment relating to citizenship and deportation, and that had Flores been properly advised of the immigration consequences of her plea, there is a reasonable probability that she would not have pleaded guilty. *See Ex parte Guerrero*, 400 S.W.3d at 583; *Ex parte Garcia*, 353 S.W.3d at 787.

Under the prevailing standards, trial counsel was required to ensure that applicant, a noncitizen, was advised of the consequences of her guilty plea as it relates to her immigration status. Under *Padilla*, the attorney was required, even if the law was unclear on whether the offense was a deportable offense, to at least warn Flores of the risk of deportation. *Padilla*, 559 U.S. at 369. With respect to Flores, the trial court found that the deportation consequences were "succinct, clear, and explicit," but we conclude that we need not decide whether the deportation consequence was "truly clear," because the record contains evidence that Flores, a noncitizen, was never informed of even the "risk" of any adverse immigration consequences, much less of deportation. The trial court found that Flores was not afforded effective assistance of counsel and the ineffective assistance rendered her plea involuntary, and that she was prejudiced as a result of the deficiency.

After reviewing the evidence under the deferential standard of review, we cannot conclude the trial court abused its discretion in determining appellee satisfied her burden of proof to show a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla,* 559 U.S. at 372. Therefore, we hold the trial court did not abuse its discretion in concluding

15

Flores's guilty plea was involuntary due to ineffective assistance of counsel. *See id*. at 366-69. We overrule the State's second issue.

Having overruled the State's issues, we affirm the trial court's order granting relief on Flores's application for writ of habeas corpus.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 9, 2014
Opinion Delivered July 9, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

16