# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00781-CR

**Alejandro John Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 11-216-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Alejandro John Garcia guilty of indecency with a child by contact and assessed a sentence of ten years in prison. Garcia contends that the trial court abused its discretion by excluding his expert's testimony, that the trial court abused its discretion by refusing to include the words "intentional and knowing" in the application paragraph of the jury instruction, and that the evidence is insufficient to sustain the conviction for indecency by contact. We will affirm the judgment.

## BACKGROUND

Garcia's nine-year-old daughter went for an overnight visit to the apartment Garcia shared with his girlfriend and their four-year-old son. She watched a movie with her brother in her brother's room while Garcia watched a movie in the living room with the girl's uncle, smoking marijuana. Garcia's girlfriend was at work that evening. Garcia's daughter testified that she

ordinarily slept on the couch during her visits and that, after the movies finished, Garcia fixed the couch as her bed that night. They watched some television and, at around 9:36 p.m., she fell asleep on the couch. She said that Garcia also fell asleep on the couch, which was unusual. She woke up later when Garcia touched her, unbuckled his belt, then did "something really gross." She testified, "He pulled down my pants and stuck his middle part into my bottom. And then he put his hands on my front part." She testified that he put his "middle part inside my butt." She testified that after doing those things "he woke up, and he said, 'Oh, my God.' And then he started wiping my butt and pulled up my pants. And then he went and threw the paper towel away. . . . [H]e told me to take a shower, but I didn't." She said that Garcia said, "What the F?" and "Why did I do that?" to himself. She testified that he did not tell her to keep quiet, did not threaten her, did not try to bribe her, and did not blame her. She said that she knew Garcia was asleep when these events occurred "because he wouldn't have done that if he was awake."

The girl's grandparents came and picked her up later that night and delivered her to her mother, who then immediately took the child to the hospital for a checkup. Because of the nature of the actions reported to hospital personnel, Austin Police were notified.

Austin police officer Gregory White testified that Garcia admitted that he touched his penis to his daughter's anus, but Garcia claimed he did not penetrate her. White testified that Garcia "actually said that he wasn't sleepwalking, but was just tired. He was trying to describe it. He was just tired. . . . He offered that he was drinking and smoking weed but didn't offer any other explanation as to what would explain an altered mental state." White said that Garcia reported being fatigued from having worked long hours. White also testified, "In this case he was offering the explanation that he [mistook] his daughter [] for his girlfriend []."

The child's mother testified that her daughter texted her upset, but would not speak to her when she picked her up later that night. The mother said that Garcia denied doing anything to their daughter. The child started shaking at the hospital and refused to allow a genital exam. The mother testified that she continues to take her daughter to counseling even though her daughter says she does not know why she has to go and the counselor thinks they have nothing further to discuss.

The Department of Public Safety forensic examiner testified that tests of the child's panties indicated the presence of semen in a stained area, though because no sperm were found the substance could have been something else. The examiner tested the stain for DNA, compared it to Garcia's DNA, concluded that Garcia could not be excluded as a contributor, and stated that the probability of choosing another unrelated contributor was one in 436.6 million for Hispanic persons.

Based on the State's objection, the trial court excluded Garcia's proposed witness, Dr. Michel Bornemann, a self-described "sleep physician." Dr. Bornemann testified during a voir dire examination and a bill of exception. He would have testified to the jury about the possibility of Garcia acting sexually while essentially asleep. He said he reviewed a police report, reviewed the hospital's report on the examination of the victim, listened to Garcia's interview with Austin police, interviewed Garcia, and talked to Garcia's girlfriend. Dr. Bornemann did not physically examine Garcia, nor did he test him for whether he was a sleepwalker. He testified that such tests can show whether someone sleepwalks during that test and whether the person has any underlying condition that could account for sleepwalking, but not whether a person might have sleepwalked on a particular previous occasion.

The jury found Garcia not guilty of aggravated sexual assault of a child, but found him guilty of indecency with a child by contact.

DISCUSSION

Garcia challenges the trial court's exclusion of Dr. Bornemann's testimony, its jury instruction, and the sufficiency of the evidence to support the conviction.

**The court did not err by excluding the proffered expert testimony**.

Garcia contends that the trial court erred by sustaining the State's objection to his expert, Dr. Bornemann. Garcia contends that the trial court wrongly excluded the testimony because it did not like the way in which Dr. Bornemann reached his conclusion.

We review trial-court rulings on the admissibility of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). A trial court abuses its discretion when it acts without reference to any guiding principles, and we reverse the judgment when that abuse harms the defendant. *Ex parte Ramey*, 382 S.W.3d 396, 401 (Tex. Crim. App. 2012). A party proffering expert testimony must show that the scientific evidence is reliable through clear and convincing evidence showing the following: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Sexton v. State*, 93 S.W.3d 96, 100 (Tex. Crim. App. 2002) (citing *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)).

When Garcia called Dr. Bornemann, the State requested and obtained a hearing concerning the underlying facts or data on which his opinion was based. *See* Tex. R. Evid. 705(b). Through Dr. Bornemann, Garcia sought to offer evidence that he was essentially sleepwalking when he touched his daughter and, therefore, that he lacked the requisite intent or voluntariness to commit the crime. At the close of the voir dire examination, the State objected to the testimony, arguing

4

that it was based on a novel and unreliable scientific theory that could mislead the jurors. The State contended that the theory lacked diagnostic criteria and support in the medical community and, furthermore, that Dr. Bornemann did not "appropriately diagnose this defendant as having any disorder."

We will focus on the third of the factors set out in *Sexton*. Dr. Bornemann stated that he did not examine Garcia physically, although they conversed by telephone, and he did not rely on any examination of Garcia regarding sleep disorders. Dr. Bornemann testified as follows:

> Clinically, in order to make a clinical diagnosis, you need longitudinal assessment of the individual to confirm that it is a recurrent problem that is of significant health or safety consequences to the individual and/or individuals that were with him. I can only guess what the situation would be with Mr. Garcia. But without having a longitudinal assessment as a physician and continuity of care, I can't with confidence state that he has a specific disorder.

Thus, despite his conclusions regarding Garcia's actions, Dr. Bornemann essentially testified that diagnostic techniques are required to find a disorder and that he did not apply those techniques to Garcia. We cannot say that the trial court abused its discretion by excluding Dr. Bornemann's testimony because Garcia failed to show by clear and convincing evidence that a valid technique for diagnosing parasomnia was properly applied to him. *See Sexton*, 93 S.W.3d at 100.

**The jury instruction on indecency was not erroneous.**

Garcia contends that the trial court erred by refusing to include the words "intentionally or knowingly" in the application paragraph of the indecency charge. The charge given was as follows, and Garcia requested that the terms "intentionally or knowingly" be included where we have inserted asterisks inside of brackets:

5

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, ALEJANDRO JOHN GARCIA, on or about December 24, 2010, in Williamson County, Texas, [***] engaged in sexual contact with a child younger than 17 years of age, namely, any touching by the defendant, including touching through clothing, of any part of the genitals of [KG], with intent to arouse or gratify the defendant's sexual desire, then you will find the defendant guilty of the offense of Indecency with a Child by Contact, as alleged in Count Two of the indictment, and so say by your verdict.

Garcia contends that, without the requested words, the charge improperly instructed the jury to convict him because he engaged in prohibited contact, even if he was unaware he was doing it and had no intention of doing it.

The jury charge must contain an accurate statement of the law and must set out all of the essential elements of the offense. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). In examining the charge for possible error, we must view the charge as a whole instead of as a series of isolated and unrelated statements. *Id.*

The applicable statute prohibits persons from engaging in sexual contact with a child. *See* Tex. Penal Code § 21.11(a). Sexual contact occurs when a person acting with the intent to arouse or gratify the sexual desire of any person either touches certain parts of a child's body or touches any part of a child's body with certain parts of the toucher's body. *Id.* § 21.11(c). The statute does not include "knowing" as a culpable mental state for this offense, *see id.*, so the court's exclusion of that word was proper. Contrary to Garcia's argument, the charge given did not create a "strict liability" offense based merely on contact because it instructs that, to be guilty of the offense, the defendant must have committed the requisite touching intending to arouse or gratify someone's sexual desire. Courts have held that *including* the words "intentionally or knowingly" as Garcia requested in an indecency charge would be error. *See Bazanes v. State*, 310 S.W.3d

6

32, 36-37 (Tex. App.—Fort Worth 2010, pet. ref'd); *Jones v. State*, 229 S.W.3d 489, 492 (Tex. App.—Texarkana 2007, no pet.). The trial court did not abuse its discretion by excluding the terms "intentionally or knowingly" where Garcia requested they be included because his requested instruction would not have accurately described the offense as defined by the language of the statute.

**The evidence was sufficient to support the finding of guilt.**

Garcia contends that the record lacks evidence to support the finding that he had the requisite intent when having sexual contact with his daughter. He contends that there is no evidence that he acted intentionally or knowingly. A conviction on the offense of indecency with a child requires a finding that the offender had sexual contact with the child intending to gratify the sexual desire of any person. *See* Tex. Penal Code § 21.11. While the offense of indecency by contact requires a finding that the offensive contact was committed with the specific intent to arouse or gratify someone's sexual desire and a more basic finding that the contact was committed voluntarily, *see id.* § 6.01(a), the offense does not require any other finding of knowledge or intent.

When reviewing the sufficiency of the evidence to support a verdict, an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). The reviewing court must defer to the jury's determination of weight and credibility; the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The fact finder is entitled to judge the credibility of the witnesses and can believe all, some, or none of the testimony presented. *Chambers v. State*,

7

805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When the record contains evidence supporting conflicting inferences, the appellate court must presume that the jury resolved any conflicts in favor of its verdict. *Rabb v. State*, 434 S.W.3d 613, 622 (Tex. Crim. App. 2014). Intent may be inferred from acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Garcia does not dispute that he made the requisite contact with his daughter or that she was a child within the statutory definition, but contends that he did not act with the requisite intent or voluntariness. *See* Tex. Penal Code §§ 6.01(a) (voluntariness), 21.11(c) (sexual contact). He points to his daughter's testimony that he was asleep when he touched his daughter and that he "woke up, and he said, 'Oh, my God.'" He contrasts his behavior with that of other persons convicted of sexual crimes. He cites a case in which the Texarkana court of appeals reversed a conviction for aggravated sexual assault of a child based on the State's failure to prove that an accused acted voluntarily when touching his daughter because the State provided no evidence that the defendant was awake or that a sleeping person could not engage in the offensive conduct. *Whatley v. State*, 415 S.W.3d 530, 548 (Tex. App.—Texarkana 2013), *reversed*, No. PD-1627-13, 2014 Tex. Crim. App. LEXIS 1511 (Tex. Crim. App. Oct. 8, 2014).

Since Garcia filed his supplemental brief based on the Texarkana court's opinion, however, the court of criminal appeals has reversed that decision, reinstating the jury's verdict of guilt. 2014 Tex. Crim. App. LEXIS 1511. Although the child in that case told investigators when she was eleven years old that Whatley was asleep during the event because his eyes were closed and he was snoring, she acknowledged during her testimony when she was eighteen that she had been unable to see Whatley's face when they were in bed because he was behind her. *Id.* at *14.

8

The court of criminal appeals found evidence from which the jury could have inferred that the child had mistaken Whatley's closed eyes and heavy breathing for sleep. *Id.* at *15. That court wrote that the jury could have concluded that the child reported that Whatley was asleep to reconcile her love for him with the abuse by asserting that he must have been unaware of his actions. *Id.* at *14. Although the child had theorized that Whatley might have sleepily mistaken her for her mother, her mother testified that, in the five years she had shared a bed with Whatley, he only once reached for her in his sleep, and on that occasion he did not touch or penetrate her vagina.[1] *Id.* at *14-15.

As Garcia argued, the testimony in this case is somewhat similar to that in *Whatley*—a record that the court of criminal appeals has concluded supports the jury's verdict and the implicit finding that Whatley's actions were voluntary. *See id.* at *16-17. There is some evidence on which the jury could have relied to find that Garcia's actions were voluntary and committed with the requisite intent. The presumptive presence of semen on the child's clothing is clear evidence that Garcia's sexual desires were aroused and gratified by the contact. Although Garcia's daughter testified that her father was asleep during this event, the jury was entitled to disregard this aspect of her testimony and apparently did so. The jurors were entitled to and must have chosen instead to credit Garcia's statement to police that he was not sleepwalking when it occurred. They may have credited his statement that he believed he was touching his girlfriend as

---

[1] This testimony conflicted with the mother's report to police investigators that Whatley had several times initiated sexual contact while asleep and claimed not to remember doing so. *See Whatley v. State*, 415 S.W.3d 530, 546 (Tex. App.—Texarkana 2013), *reversed*, No. PD-1627-13, 2014 Tex. Crim. App. LEXIS 1511 (Tex. Crim. App. Oct. 8, 2014). Although the court of criminal appeals did not reference this conflicting evidence in its opinion, it could have concluded that the jury was entitled to resolve the conflict in favor of the mother's trial testimony.

showing that he was awake enough to recognize that he was contacting someone in a sexual manner—demonstrating that his actions were voluntary—but disbelieved his assertion that he thought he was touching his girlfriend. The standard of review does not permit us to reverse the conviction on this record.

## CONCLUSION

Finding no reversible error presented, we affirm the conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed: December 11, 2014

Do Not Publish

10